## Margaret C. Decuir, Wife, &c., v. Ovide Lejeune et al.*

Where, by the marriage contract, the present and future property of the wife is constituted dotal, property belonging to successions devolving upon the wife as heir, after the marriage, will be regarded as the dotal property of the wife.

Where the husband purchased the dotal property of the wife under an administrator's sale, made for the ostensible purpose of paying debts of the succession to which the wife was heir, but with the real intention of divesting the property of its dotal character, so as to remove the obstacle of dealing in regard to it with third persons—*Held :* That it was a simulation, and that the adjudication to the husband was an absolute nullity.

Where a party denies under oath, that a plea filed in his name by an attorney was filed with his authority, and the allegation is borne out by the proof, the act of the attorney is not binding.

An obligation which is absolutely null is not susceptible of confirmation or ratification ; a new obligation to be substituted for it is necessary ; and where the obligation is susceptible of confirmation or ratification, it is requisite that the acts relied on as being in confirmation or execution of the defective obligation, should have had in view and have been intended to supply the defects in the obligation which would render it null.

With regard to confirmatory acts containing an express ratification, and the voluntary execution importing a tacit ratification, the rules are the same so far as the substance is concerned ; there is difference only respecting the burden of proof.

The wife who is divorced from her husband, and takes no steps to accept the community within the legal delays, is presumed to have renounced it.

APPEAL from the District Court of the Parish of Pointe Coupee, *Haralson*, J. *R. N. Ogden, C. Roselius* and *Ed. Phillips*, for plaintiffs and appellants. *T. J. & W. H. Cooley* and *H. M. Spofford*, for defendants.

Voorhies, J.   The plaintiff, *Marguerite C. Decuir*, the divorced wife of *Ovide Lejeune*, sues the latter for a share in the community of acquets and gains, and for the restitution of her dotal estate.

The parties were married in May, 1842.   By the marriage contract, the present and future property of the wife was constituted dotal.

*Madeleine Lacour*, the plaintiff's mother, died in the year 1847, and her father, *Jean B. Decuir*, died two years afterward.   Their successions comprised a large sugar plantation, with seventy-five slaves.

The spouses took possession of the respective estates without form of law : the whole property in question, consequently, assumed the dotal character.

The debts due did not exceed the sum of fourteen thousand dollars,—an amount comparatively small, if previous crops are taken as a criterion.

*Ovide Lejeune* was anxious to pay these debts.   In a petition drawn up by *C. Poydras, Esq.*, then a practising attorney, the plaintiff, with the authorization and assistance of her husband, applied for the sale of a tract of land unconnected with the main plantation, for the purpose of relieving the dotal estate of this encumbrance.   No action, however, was taken upon this petition, which pursued the course pointed out by law in such cases.   The views of *Ovide Lejeune* were different, or had undergone a change.   For the purpose of divesting the property of its dotal character, which was an obstacle in dealing with third persons, he had recourse to another plan.—Mortuary proceedings were had in the succession of *J. B. Decuir*, deceased; no mention being made of the estate of *Madeleine Lacour*, deceased ; an inventory was made of all the property, an administrator

---

*This case was omitted from the New Orleans cases and is reported in connection with the decision at Alexandria as to the execution of the judgment.

appointed, and a cash sale made of the whole property in block, slaves, movables and immovables, the whole being adjudicated to *Ovide Lejeune*. A tableau of classification and distribution filed by the administrator was duly homologated, and subsequently a formal discharge given by the spouses to the administrator.

But, as shown by the evidence in the record, this whole administration was a simulation, resorted to for the purpose of divesting this property of its dotal feature. *Ovide Lejeune* had caused *J. D. Lacour* to be appointed administrator of the estate of *J. B. Decuir*, deceased. *Lacour* acted as such in appearance; but he did not receive one dollar of the price of adjudication of the plantation, amounting to $75,000 ; he paid no debts; he did not receive, nor did he claim the payment of the sum of $1,880 charged on the tableau as his commission, although deducted in striking out the balance of the paraphernal rights of the plaintiff.

The whole administration was a fiction, the object of these mortuary proceedings being to divest the property of the dotal character. Was this object accomplished? " The property of dotal immovables, says the Code, can never be transferred to the husband, even by express agreement." C. C. 2335, 2337. The adjudication to *Ovide Lejeune* was an absolute nullity, and gave him merely a nominal title : the property remained the dotal property of his wife, *M. C. Decuir*, as if no mortuary proceedings had ever taken place. C. C. 2336, 2340.

Two or three years elapsed. The spouses, although living under the same roof, had ceased to cohabit as man and wife. *Lejeune* kept a colored concubine in the neighborhood of his residence, publicly and notoriously. In the meantime, he was prosecuted for having feloniously shot one *Solomon Beach;* and, on that occasion, as in the present suit, he labored to prove an improper intimacy between *Beach* and *Marguerite C. Decuir*. We are at a loss to understand why the scandal of the past is now evoked, since the only question presented for adjudication is one of property.

*Lejeune* sued his wife for a divorce, on the alleged ground of adultery. The papers were served upon the former, the latter being at the time absent from the house where they resided. A judgment by default was entered upon this informal citation, and the suit subsequently dismissed. After the lapse of three years, *Lejeune* again sued his wife, but then only for a separation from bed and board, on the ground of abandonment.

An answer was filed for *Marguerite C. Decuir* by the attorney who had instituted the suit in behalf of the plaintiff. It admitted that she had withdrawn herself from the common dwelling, but averred that she did so because her husband there kept his concubine. In reconvention, she claimed several slaves as her dotal property, and a blank sum as her paraphernal rights in the estate of her father, *J. B. Decuir*, deceased. She further renounced the community of acquets and gains. *Lejeune's* answer to the reconventional demand recognized her claim for paraphernal funds, and specified the amount or balance, which, ultimately, was taken as a basis of the judgment. This judgment was rendered in her favor ; it decreed the divorce, and awarded to her her dotal and her paraphernal rights as claimed and admitted in the pleadings. Immediately followed notarial acts in execution of this judgment.

The defendant, *Lejeune*, contends that, conceding the nullity of his original title, the plaintiff, *Decuir*, has precluded herself by these voluntary acts of confirmation and ratification. The latter joins issue upon this point, and alleges that she was

prevailed upon by fraud and collusion to act as she did, and that she labored all the while under grave errors of law and fact.

It is not amiss to enquire into the consequences of a judgment which would preclude the plaintiff's demand in revendication of her dotal property.

When *Ovide Lejeune* and *Marguerite C. Decuir* started in life, nearly the whole property belonged to her; indeed, his separate-property was in comparison a trifle. After the lapse of a few years, the marriage is dissolved; and, upon a liquidation of the right of the spouses, the whole estate is absorbed by the husband, who, in exchange, executes his individual notes in favor of the wife for a sum averaging less than a third of the value of her property,—and these notes payable in several instalments, and secured by an unrecorded mortgage!

Such a result is a spoliation, unless the plaintiff has knowingly and willingly made a sacrifice of her rights; and, before fastening this loss upon her, it is but natural that the court should require cogent evidence as to a voluntary execution on her part, within the intendment of the Civil Code.

The only ground upon which the plaintiff can be cast in her demand for the restitution of her dower, is that of confirmation or ratification, express or implied, on her part, since the dissolution of the marriage. It is evident, that no acts of the wife previous to that event, can have that effect: indeed, these are obnoxious to the same objections which invalidate the original obligation. Besides, the power of the spouses to contract with each other is limited to certain matters having no affinity with the present case. C. C. 2421.

With regard to the answer filed in the divorce suit, it is proper to state that, in the present action, she denies, under oath, having authorized the insertion of a reconventional demand relative to her dotal and paraphernal rights. This allegation is borne out by the record. Her counsel, on that occasion, conceived that he was authorized to act as he did in that respect, but was mistaken in the conclusions which he drew from her conversation upon this subject. At all events, he should not have appeared at all on her behalf, having instituted the suit as counsel for the plaintiff. The consent of the latter had to be obtained for the purpose of enabling the counsel thus to change his position. The counsel who thereupon succeeded him to represent *Lejeune* were given to understand that there was no real difficulty in the litigation, but that it was in the nature of an amicable suit to settle the rights of the spouses. ·

Apart from these considerations, the pleadings and judgment in the divorce suit of *Ovide Lejeune* v. *M. C. Decuir*, and the notarial acts in execution of this judgment, do not in law amount to an express or tacit ratification of the former's title to the latter's dotal property.

Under the provisions of Art 2252 of the Civil Code, which are identical with Art. 1338 of the Napoleon Code, there are several requisites to a binding confirmation or ratification.

1. There must be an obligation susceptible of ratification.

2. In the act of confirmation, the substance of the invalid obligation must be given.

3. Mention must be made of the motive of the action of nullity or rescission, and of the intention of supplying the defect, on which that action may be founded.

4. There must be a confirmation, ratification, or voluntary execution in due form.

On the subject of obligations susceptible of ratification, Marcadé says : " Rati-

fier ou confirmer une obligation, c'est effacer le vice dont elle était atteinte, en renonçant à invoquer la cause d'annulation que l'on pouvait faire valoir contre elle. Toute ratification est donc impossible pour une obligation proprement nulle : sans doute, on peut créer une obligation nouvelle et efficace pour la substituer à celle qui n'avait qu'une existence apparente, mais on ne peut pas valider celle-ci ; car le néant ne peut pas plus être confirmé qu'il ne peut être détruit : *quod nullum est confirmari nequit.*" Vol. 5, p. 344. For instance, a simulated sale cannot be the object of ratification : there is nothing to ratify. The act of confirmation or ratification is obnoxious to the same objection as the apparent obligation ; and if there be subsequently the exchange of a price for the property, it is not an act of confirmation or ratification, but, properly speaking, the substitution of an original obligation. " Mais on ne peut confirmer les engagements dont la loi ne reconnaît pas l'existence, ceux qui n'ont point de cause, ou qui n'en ont qu'une fausse ou illicite." Boileux & Poncelet Com., Art. 1338, C. N.

When the obligation may be confirmed or ratified, it is requisite that the acts, which are pointed out as being in confirmation or execution of the defective obligation, have in view and be intended to supply the very defect which strikes it with nullity. Upon this point, our law is in unison with the French jurisprudence, as interpreted by the courts and by learned commentators. Journal du Palais, décrets du 27 mars, 1812,—du 5 décembre, 1826,—et du 15 novembre, 1837 ; Cour de Cassation, 25 mars 1806 ; Cour de Turin, 4 mars, 1806, 26 mai, 1807.

With regard to the confirmatory acts, containing an express ratification, and the voluntary execution, importing a tacit ratification, the rules are the same, so far as the substance is concerned ; but there is a material difference respecting the burden of proof. In the latter, the debtor or obligor is bound to administer proof that he was not aware of the defect in question ; whilst, in the former, the confirmative act must show this of itself. C. C. 2252 ; Marcadé, vol. 5, p. 344.

Now to the facts, upon which bears the law, as above elucidated.

The title of *Ovide Lejeune* to the plaintiff's dotal property, is, to say the least, an adjudication void for simulation, and, therefore, unsusceptible of ratification or confirmation. Admitting, however, that it might have been ratified, the acts pointed out do not amount to a valid ratification of the illegal alienation of the plaintiff's dotal property. Far from being intended to cover the vice or defect of illegal translation of dotal property to the husband, the pleadings and judgment in the divorce suit, as well as the notarial acts in execution, positively ignore the existence of this vice or defect, The answer in reconvention speaks of paraphernal rights,—the notarial acts follow the judgment in this respect,—in the whole of the proceedings, not a word is uttered with reference to *Lejeune's* want of a valid title, and still less of the defects invalidating his pretended title,—and, finally, the evidence shows that it was but shortly before the institution of the present action, the plaintiff became aware of the simulated title of her husband to her dotal property. The proceedings, judgment and authentic acts upon which the defendant relies, far from establishing the fact of ratification, prove that the parties did not contemplate to repair the defects invalidating the defendant's apparent title of ownership. Indeed, up to the present time, the defendant strenuously contends that his title is valid *ab initio !*

The objection, that the plaintiff has not offered to reinstate the defendant in the position he occupied before the settlement made by the notarial acts, is not a serious one, under the views above expressed. She has tendered back all the

notes in her possession, and has failed to tender back but a comparatively small amount. But he is in the possession of her plantation, and, when the revenues of her property will be accounted for, he will have an opportunity to obtain redress, if he has been injured in this respect.

With regard to the claim for a share in the community, the plaintiff has no cause of action. Being a divorced wife, she is, by her inaction during the legal delays, presumed to have renounced. C. C. 2382, 2404; Marcadé, vol. 5, p. 597; 12 An. 76, *Audrich* v. *Lamothe.*

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed; that the plaintiff, *Marguerite C. Decuir,* do have judgment against the defendant, *Ovide Lejeune* for the dotal property derived from the successions of *J. B. Decuir,* deceased, and *Magdeleine Lacour,* deceased; and that this case be remanded for further proceedings, in accordance with the views expressed in the foregoing opinion.

It is further ordered and decreed, that the appellee pay the costs of appeal.

MERRICK, C. J. My impression of the effect of the judgment in the divorce case, and of the two notarial acts passed subsequently thereto, and receipt of the notes, and collection of a part thereof, is different from the conclusions of my colleagues, but I do not wish to enter a formal dissent.