## B. A. ALDERSON *v.* EDWARD SPARROW.

| 16 | 227 |
| 124 | 238 |

The law does not require the registry of a tax collector's sales in the office of conveyances out of New Orleans. The decision in the case of *Baker* v. *Towle's Administratrix et al.*, 11 La. 438, re-affirmed.
The Civil Code of 1825 requires a registry, as regards third persons, of *only* instruments made under private signature (Arts. 2242, 2417). The recording of other acts is provided for by legislative enactments. Acts of 1855, No. 274 p. 335, and No. 285 p. 345. The first of these two acts is a substantial re-enactment of the 7th section of the act of 1810, p. 60 ; and of the 1st section of the act of 1813, p. 206. See to the same effect Revised Statutes of 1852, *verbo* Recorder, p. 475, §§ 1 & 2.
The purchase of one's own property is null. C. C. 2418.

APPEAL from the District Court of the Parish of Concordia, *McVea*, J.
T. P. *Farrar* and A. T. *Steele*, for plaintiff. H. B: *Shaw*, for defendant and appellant.

DUFFEL, J. The plaintiff caused to be recorded in the office of Mortgages of the Parish of Concordia, on the 10th of July, 1851, a judgment which he had obtained against *Thomas Curry*.

On the 10th of February, 1849, *Curry* agreed, in a writing drawn up by the defendant, *Sparrow*, to sell to P. *Alexander* the undivided half of sec. 9, the S. E. half of sec. 8, fractional sections 16 and 17, and the W. half of sec. 15, all in town-

ship No. 7, north, of range 7, east, in the Parish of Concordia, said half containing about 960 acres. This instrument was not recorded before 1853.

On the 10th of January, 1852, *Curry* made a deed to *Alexander*, in accordance with their aforesaid agreement. This last deed was accepted by the present defendant for the vendee, and was duly recorded on the 22d March, 1853.

The above described land forms a part of the Bringier grant.

The object of the present suit is to subject the above described property to the payment of the said mortgaged judgment, in the hands of *Edward Sparrow*, the actual owner and third possessor of the premises.

The District Judge rendered judgment in favor of the plaintiff, ordering the seizure and sale of the property to satisfy the plaintiff's demand.

The defendant appealed.

In 1841 *Curry* and *Garland* purchased the Bringier grant as containing 40,000 arpents.

The claim was patented as containing only 28,971 68-100 acres.

*Curry* and *Garland*, it appears, sold divided portions of the land, to the extent of 5,130 acres, thus leaving undivided 23,841 67-100 acres. They sold, June 3d, 1846, to *W. C. Hamner*, an undivided interest of 1,500 acres, and a like undivided interest to *H. A. Bullard;* and by a compromise, the heirs of *James Mooney* were, on June 25th, 1846, recognized as undivided owners for 5,500 63-100 acres. The undivided interest of *Curry*, in the tract of 23,841 67-100 acres, was thus reduced to 7,670 52-100 acres on the latter date.

On the 7th of April, 1849, the heirs of *J. Bastable* recovered by judgment of *Curry* an interest of 4,329 undivided acres; and on the 30th of April, 1850, the Sheriff of the Parish of Concordia, as tax collector, executed a deed of sale in favor of the present defendant, *Edward Sparrow*, of the undivided interest of *Curry* in the Bringier grant, this interest being put down at 7,500 acres, more or less, in the Sheriff's deed.

It is thus seen that the entire interest of *Thomas Curry* in the Bringier tract had been absorbed before the date of the registry of the judgment of the plaintiff, *B. A. Alderson.*

The tax sale to *Sparrow* was, on the day of its execution, recorded by the Clerk of the District Court in the book of Sheriff's deeds, but was only recorded in the Recorder's office of conveyances on the 25th October, 1852.

The law does not require the registry of collectors' sales in the office of conveyances out of the city of New Orleans, nor are we advised that a recording is necessary in the Parish of Orleans. Such was the decision in the case of *Baker* v. *Towles' adm'x et al.*, 11 La. 438.

Our predecessors say: " But the plaintiff contends, that the Sheriff's deed can have no effect against him, because it was not recorded until after the institution of this suit, and that the Act of 1813, as well as that of 1810, and the Civil Code of 1808, required that such deeds should be recorded, in order to give them effect against third persons.

" It does not appear to us that either of the provisions relied on embraces deeds of this kind. The Act of 1813 speaks of Sheriffs' sales made under execution, and although, in some respects, there is some analogy between the two cases, yet the tax roll, which is the warrant of the collectors to coerce the collection of taxes, is certainly not an execution, nor can the sale be said to be by the Sheriff in that capacity. His sureties as Sheriff are not responsible for his acts as collector. He gives a distinct bond."

The Civil Code of 1825 introduced no change in this respect, and requires a registry, as regards third persons, of *only* instruments made under private signature.   Arts. 2242, 2417.   The recording of other acts is provided for by legislative enactments.   Acts of 1855, No. 274, p. 335, and No. 285, p. 345.

The first of these two Acts is a substantial re-enactment of the seventh section of the Act of 1810, p. 60, and of the first section of the Act of 1813, p. 206.   See, to the same effect, Revised Statutes of 1852, *verbo* Recorder, p. 475, §§ 1 and 2.

It also appears from the evidence, that in 1854, *William C. Micou*, who had acquired the undivided interest of the heirs of *James Mooney*, instituted, in the District Court of the Parish of Concordia, an action in partition against all his co-owners, including *Thomas Curry*, of the heretofore mentioned undivided 23,841 67-100 acres of land.   The sale of the whole property, by separate section, and by fractional section, as given in the United States survey, was, under these proceedings, decreed on the 11th of November, 1854, and the judicial sale took place in July, 1856.   The undivided interest of each co-proprietor was designated in the decree of partition as follows:

Interest of the succession of *William C. Micou* . . . . . . . . . . . . . . . . . 5,500.63 acres.
  "     " *Wright, Williams & Co* . . . . . . . . . . . . . . . . . . . . . . . . 1,500      "
  "     " *William C. Hamner* . . . . . . . . . . . . . . . . . . . . . . . . . 1,500      "
  "     " *Edward Sparrow* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,506.02   "
  "     " *D. S. Stacy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,753.01   "
  "     " *D. S. Stacy's* six minor children . . . . . . . . . . . . . . . . . . . 2,753.01   "
  "     " *J. D. Denegre* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,329      "

         Total as above . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,841.67   "

*D. S. Stacy*, prior to the death of his wife, in whose rights his six minor children figure in the partition suit, had conveyed to *Edward Sparrow* the undivided interest of all his acquisitions in said grant, and had acquired the undivided interest of all the acquisitions of *Edward Sparrow* in the same.   Thus their interest was the same.

At the partition sale of July, 1856, *Stacy* and *Barrow* acquired, among other property, the sections and fractional sections of land described in the sale from *Curry* to *Alexander*, (we will here remark, that *Alexander* conveyed the land bought by him from *Curry*, to *Sparrow* and *Stacy*, in December, 1853) and subsequently, at a judicial sale made to effect a partition between *Sparrow* and the heirs of *Stacy*, the former acquired the lands described in the *Alexander* sale, with the exception, perhaps, of a portion of the west half of the section 15.

In the first partition suit, *D. S. Stacy*, in his answer, after stating various conveyances made by *Curry* and *Garland*, adds: "Defendant shows that the share of *Thomas Curry* in said grant was 9,192 52-100 acres, and has been disposed of in the following manner, viz:

Recovered by *Bastable's* heirs . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,329      acres.
Sold to *Mrs. Lillard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,280      "
  "    " *John Johnson* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,764      "
  "    " *P. Alexander* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 920      "
  " at tax sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 899.52      "

                                                    9,192.52      "

This answer was adopted by *Edward Sparrow*, and the present plaintiff now

contends that *Sparrow* cannot gainsay his judicial admissions, and rest his title on the collector's sale, and by that means defeat his vested rights.

The plaintiff was not a party to the partition suit, nor did he acquire any right on the faith of these declarations, for his judgment and its registry were of anterior dates. Besides, we know of no law which, as a general rule, prevents a party from claiming ownership to property under different titles. In fact, the purchase of one's own property is null. C. C. 2418.

It may well be that, in this instance, the defendant did not object to the sale from *Curry* to *Alexander,* because he was cognizant of the prior promise of sale, and had doubts as to the validity of his sheriff, or tax sale, as to *Alexander's*. interest, by reason of such prior knowledge of his equitable right; but surely no one, excepting *Alexander* or those claiming . under him, could have successfully contested the title of *Sparrow* under said tax sale, unless for other causes.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed and avoided, and that ours be for the defendant, with costs in both Courts.