## No. 704.

### G. M. BAYLY & POND vs. E. A. GIVENS, SR.

Article 326 of the Code of Practice which provides that if a defendant denies his signature of the instrument he is sued on, he shall n t, if his signature is proven, be allowed to set up any other defense, only applies when the instrument sued on purports to be signed by *the defendant himself.* It does not apply when the instrument is signed by one assuming to be the *agent* of the defendant.

APPEAL from the Eleventh Judicial District Court, parish of Lincoln. *Trimble*, J.

*R. W. & R. Richardson*, for plaintiffs and appellees.

*Gaskins & Barksdale* and *J. S. Young*, for defendant.

The opinion of the court was delivered by

MANNING, C. J. This suit is brought by the commercial firm of G. M. Bayly & Pond, of New Orleans, against E. A. Givens, Sr., of Lincoln parish, and is founded on a draft alleged to have been drawn by E. A. Givens, Sr., *per pro.* B. C. Alexander, on W. Morrison & Co., for $2550, in

favor of B. C. Alexander, accepted by Morrison & Co., and indorsed B. C. Alexander, in blank, dated New Orleans, April 19, 1873, and due ten months after date. It is alleged by plaintiffs that they are the owners and holders of the draft, having acquired the same for a valuable consideration; that E. A. Givens, Sr., by his duly authorized agent, B. C. Alexander, executed the draft; that at maturity the draft was not paid, the drawees having no funds of the drawer in hand, and that demand and protest were waived with the knowledge of the drawer.

The defendant filed what he termed a peremptory exception and answer, in which he pleads that " had he drawn such draft as that sued on, or caused the same to be drawn, he was entitled, under the law, to notice of protest and dishonor," which he avers was not given. He then denies signing, or causing to be signed, the draft; denies that he authorized B. C. Alexander, or any one else, to sign the draft, either verbally or in writing. He alleges that Alexander never was authorized for such purpose; that the signature to the draft does not appear to be the genuine handwriting of B. C. Alexander, and he denies that Alexander ever signed it. Defendant avers that he never heard of the pretended execution of the draft till long after its maturity; that he has no knowledge of any cause or consideration for the same; that the draft is a forgery, and an attempt on the part of plaintiff and W. Morrison & Co. to extort money from him, defendant, illegally, unjustly, and fraudulently.

Defendant afterward filed an amended answer and prayer for a jury under oath.

On the trial the lower court refused to allow the defendant to offer evidence in support of any part of his defense except that of forgery, holding that the only issue was forgery or no forgery, and that under an express law the defendant whose signature shall have been proven after his having denied the same shall be barred from any other defense. Code of Practice, article 326. We think the judge misapplied that law. The Code of Practice prescribes that when the demand is founded upon an obligation, or an act under private signature, which is alleged to have been signed by the defendant, such defendant shall be bound in his answer to acknowledge expressly or to deny his signature. Code of Practice, article 324. Then follows that other provision that the defendant whose signature has been denied shall, upon its being proven, be barred from every other defense.

The reason, equally with the letter, of these articles of the Code, limits their application to cases where the signature of the defendant himself is the matter denied. The expression used is, an act " alleged to have been signed by the defendant," and it is *his* signature that he must acknowledge or deny. The article treats of the defendant *whose* signature has been denied by himself, and manifestly means the personal signature

Bayly & Pond vs. Givens.

of the party who is denying its genuineness. No man can honestly plead ignorance of his own signature, but he may well be ignorant of that of his agent. It is not reasonable to suppose that the law would require a man to know the signature of his agent with the absolute certainty that he knows his own. Men often have agents whom they have never seen write, and whose signatures they have never seen. The provision of the article is punitory in its character, and it would be contrary to all rules of interpretation to extend it by implication or analogy to cases not clearly within its terms. This view is strengthened by and is in harmony with the similar provision of the Civil Code that the person against whom an act under private signature is produced is obliged formally to avow or disavow his signature, but the heirs or assigns may simply declare that they know not the handwriting or signature of the person they represent. Article 2240 (new No. 2244).

These views are conformed to what was said by this court in 1846 at this place, i. e., that the penalty established by these articles is imposed by its terms upon the party who denies. his signature, and should not be extended by implication. Bradford vs. Cooper, 1 Annual, 325.

Justice to both parties requires the case to be remanded.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is avoided and reversed, and that this cause be remanded to be proceeded with in accordance with law and the views herein expressed, and that appellees pay the costs of appeal.