No. 6766.

SUCCESSION OF H. PINARD VS. PETER HOLTEN ET AL. ON OPPOSITION OF MRS. HOLTEN.

Property purchased during marriage by the wife, in her own name, with her separate money, which she has always kept, the administration of which has never been under the husband's control, is her paraphernal property, and can not be seized by any of the husband's creditors.

Where the validity of a wife's title to property bought by her during marriage is assailed, and the property is claimed by the husband's creditors as community property, the wife may prove by parol evidence that the property was purchased by her with her separate funds.

The omission to state in the act of sale to a wife, of property bought by her during marriage, that it was bought with her paraphernal funds does not prejudice her title or increase the burden of proof which the law imposes on her in the vindication of her title.

Testimony given by a witness in one trial can not be introduced to impeach his evidence given in a subsequent trial, unless a proper foundation for it is laid by stating to the witness, at his examination on the second trial, what he had testified on the former trial.

Profits derived during marriage from the use of paraphernal funds under the control of the wife, are paraphernal.

APPEAL from the Sixth District Court, parish of Orleans. *Rightor*, J.

*Louque & Fernandez* for plaintiff and appellant.

*Cullom & Castellanos* for defendants.

The opinion of the court was delivered by

MARR, J. Under a writ of *fieri facias* issued on a judgment in favor of the administratrix of Henry Pinard against Peter Holten, the sheriff seized and advertised for sale the undivided half of a lot of ground.

Mary Ann Coeller, wife of Peter Holten, filed a third opposition, claiming to be the owner of the property seized, and she obtained an injunction against further proceedings. She alleges, in her petition, that she acquired this property of Eisenman, by purchase, for five hundred dollars in cash, with funds derived from the income and revenue of her separate, personal, paraphernal estate, which she alone administered, independently of her husband, and which never came under his administration; that she has had real and actual possession of the property since the twenty-fifth of June, 1874; and that no other person has any claim or right of ownership to the same or any part thereof.

The administratrix answered by general denial; and she prayed for the dissolution of the injunction with damages.

On the first trial in April, 1875, there was judgment perpetuating the injunction. A new trial was granted, pending which the judge died. His successor in office heard the same witnesses on the second trial, in

April, 1877, and rendered judgment decreeing third opponent to be the owner of the property seized, and perpetuating the injunction ; and the administratrix appealed.

The testimony shows that Mrs. Holten had served continuously in the same family, at Louisville, from the twelfth to the twenty-first year of her age. That she left her earnings in the hands of her employer until she was about to remove with her father to New Orleans. That she had no expenses except for clothing ; that she married Peter Holten in 1869, about a year after her removal ; that she never allowed him to have possession or control of her money ; that he had been on the police force, had been addicted to drink and was fond of betting on horse races, at which he was not successful ; and that she bought the small quantity of furniture with which they went to housekeeping. Holten was flour inspector in 1873, but it is not shown what he earned, or that he saved any thing, or that he had either property or regular calling.

Mrs. Holten was a hardworking woman ; she kept house without a servant, and made and saved whenever she could. She says her husband supplied the money for housekeeping purposes. Her brother-in-law, Patrick Holten, took her money and speculated for her in city claims and securities, making from $300 to $400 profit for her. He made several returns to her, and when he was taken sick with his last illness he sent her, by his brother, James Holten, in March, 1874, the amount remaining in his hands, seven hundred dollars. James Holten testified that he had heard Patrick advising his sister-in-law to buy property with this money to keep it out of the hands of her husband.

It was shown that Mrs. Holten lent money to different persons, $550 to her brother to assist him in establishing a store at Bayou Goula ; to James Lewis sometimes $50, sometimes $100, sometimes as much as $150 ; and to other persons, at different times, smaller sums. She testified that she gave money to Patrick Holten, to be used in speculating for her account, whenever he called for it ; and that he accounted and made returns to her, sometimes in sixty, sometimes in ninety days.

In June, 1874, Lewis found an opportunity to buy some lots adjoining his property and near the place at which Mrs. Holten lived. He had not cash enough to make the payments and, knowing that Mrs. Holten had money, he proposed to her that she should join him in the purchase. The price of the three lots was $1800 ; and Mrs. Holten, considering the investment a good one, gave him $1000 ; and he made and completed the negotiation. The lot in question was one of the three, and the price paid was $1000 in cash. The conveyance was made, by notarial act, on the twenty-fifth of June, 1874, to Lewis and Mrs. Holten, authorized and assisted by her husband. The other lots were purchased

of Stewart, as Lewis testified, but the title was not produced, nor is it in question in this case.

If the testimony was admissible and the witnesses are to be believed, the proof is clear that Mrs. Holten purchased this property with her own separate, paraphernal means, which she alone administered, and which she never permitted her husband to handle or administer.

Counsel for the administratrix objected, on the trial, that the testimony was not admissible, on several grounds, all of which may be thus stated:

1. That the act of sale under which Mrs. Holten claims, which was recorded in the conveyance office, showed the property seized to be community property.

2. That the act contains no declaration that the purchase was made with the wife's paraphernal funds, or that the property was purchased for her own or separate benefit.

3. That the act of sale can not be changed or supplemented, nor can title to real property be proven by parol testimony.

FIRST. The presumption is that all property acquired during marriage, by husband and wife or by either, belongs to the community. This, however, is a general rule subject to exceptions; and the presumption may be overthrown by proof. The recording of an act conveying property to the wife, which actually belongs to the community, certainly does not give additional credit to the husband; nor does it show that the property belongs to the community. It merely creates a presumption, and every one knows it is but a presumption, dependent on proof which must be sought elsewhere than in the act or in the registry. See Savenat vs. LeBreton, 1 La. 520; Dominguez vs. Lee, 17 La. 295; Terrell vs. Cutrer, 1 Rob. 367; Stroud vs. Humble, 2 An. 930, Metcalf vs. Clark, 8 An. 286.

SECOND. The two remaining objections may be considered together, and they have both been passed upon authoritatively by this court. In Terrell vs. Cutrer the precise objections were:

1. That a married woman who wishes to invest her paraphernal funds in the purchase of property must, in order to prevent its becoming a part of the community, declare, by *notarial act*, that she purchases for her sole account, and from what source she obtained the money given in payment.

2. That parol testimony is not admissible to prove that the purchase was made with paraphernal funds.

The court held that the law does not require the title to be by authentic act; and that the testimony was admissible. 1 Rob. 368.

In Savenat vs. LeBreton the proof was that the lot of ground in question was conveyed to the husband by the aunt of his wife, on

account of a sum of money deposited with the aunt, inherited by the wife. The court held that the lot was the paraphernal property of the wife, and she recovered it from the vendee of her husband. This decision was under the Spanish law ; but the court said our Codes would, perhaps, be more favorable to the matrimonial rights of the wife than the former Spanish laws. 1 La. 523.

In Metcalf vs. Clark it was again urged that the investment of the paraphernal funds should be expressed in the act by which the wife claims to have acquired the property. The court said : "The objection does not appear to us to be founded in law.     *     *     *
The wife, if required, would be bound in all cases to prove the reality of the sale to her *dehors* the act." 8 An. 287.

As the taking of the title in the name of the wife does not, in a contest with creditors, create even a presumption that she made the purchase with paraphernal funds, the declaration to that effect in the act is of no force or value, nor does it relieve her of the burden, nor does the omission of any statement to that effect add to the burden which the law imposes upon the wife, to prove *dehors* the act, the facts necessary to establish a separate title in her. It is the proof of the fact, not any declaration of the fact, that she made the purchase for herself, with her paraphernal funds, that vests the title in her to the exclusion of the community ; and that fact may be proven by any testimony which would be admissible in a judicial tribunal to establish any controverted fact. In Edwards vs. Edwards, 29 An. 597, where the creditor of the husband relied solely on the legal presumption resulting from the fact that the property was acquired during the marriage, we held that parol evidence was properly admitted to rebut that presumption.

On the second trial the counsel for the administratrix offered to introduce the testimony given by some of the witnesses on the first trial, to rebut and contradict their testimony given on the second trial. This was objected to on the ground, as stated in the bill of exceptions, " that counsel for defendant has not placed said witnesses on their guard."

We think the court did not err in rejecting this testimony. It is elementary that a witness can not be impeached by proof of contradictory statements made on some other occasion, without first laying proper foundation, by directing his attention to the former statements and giving him a fair opportunity to explain them if he can. The only foundation laid in this case was the statement made to Mrs. Holten, by her own counsel, who, at the beginning of his examination, on the second trial, said : " I will ask you precisely the questions that were asked you before. " This is not the foundation which the law contemplates ; but if the counsel for the administratrix had made this state-

ment, in his cross-examination, it would have been wholly insufficient. He should have informed her precisely what she answered on the former trial, not what questions had been asked. To tell a witness that the same questions would be asked, does not inform him what answers he made; and it would have been most extraordinary if the witness, after the lapse of two years, had answered the same questions in the same language, or even to the same effect, in a minute cross-examination.

Although the testimony was properly rejected, we have read it, and compared it with that given on the second trial. There are some discrepancies, particularly as to dates and amounts, with respect to which memory is necessarily and proverbially treacherous; but the material facts are not contradicted: that Mrs. Holten had and brought with her from Kentucky more money than she paid for the property seized; that she administered this money alone, without the interference or agency of her husband; that she made frequent loans to different persons; that Patrick Holten speculated with her money, on her account, and made profits for her; and that in March, 1874, a few months before she made this purchase, when Patrick was no longer able to attend to business, he sent to her by James Holten seven hundred dollars, the money remaining in his hands belonging to her.

The legal presumption that this property belongs to the community simply because it was acquired during the marriage is completely destroyed by the testimony in this case, which is not contradicted; and on a question of fact we should not be justified in disregarding the conclusions of two district judges, who successively tried the case, and who saw and heard the same witnesses, the one two years after the other. It was not shown that the community had any means or property. The advice of Patrick Holten to his sister-in-law, coupled with what is proven with respect to Peter Holten's habits, makes it improbable that he had saved much from his earnings, or that he furnished the money which Mrs. Holten lent on so many different occasions, or that with which Patrick Holten speculated so successfully for his sister-in-law, or the $1000 which she gave to Lewis to pay her part of the price of the property in question.

If during the marriage Mrs. Holten had saved the earnings of her needle, or of any other work or labor, and had invested them in property, it would have belonged to the community, because the labor, skill, and industry of husband and wife belong to the conjugal partnership; but the profits derived from the use of her money, the fruits of her paraphernal means, always administered by herself alone, did not belong to the community; and the property purchased by her with her separate paraphernal means, is also separate, paraphernal; and it is not liable for the debts of the husband or the community.

The judgment appealed from is, therefore, affirmed with costs.