On Rehearing.
ROGERS, J.
The facts of this case are correctly set forth in our former opinion handed down herein. The issue to be determined from these facts, and the law applicable thereto, is whether the real estate in controversy was the separate and paraphernal property of Alice Lewis, one of the defendants, or whether it belonged to the community existing between her and her first husband, John R. White.
It is contended, however, on behalf of plaintiffs, that this issue should be considered and determined in their favor upon their pleas of estoppel and prescription. It is therefore necessary to consider and dispose of these pleas before passing to the merits of the case.
The first estoppel urged against defendants is the one which it is claimed arises from the allegations in the answers of the forgery of the power of attorney to Prank White, which is the basis of the pretended transfer from Alice Lewis to Dr. Peatherstone. Plaintiffs argue that this is a special defense which cuts off the defendants from all other defenses, and in support of their argument cite article 326 of the Code of Practice, which reads:
“The defendant, whose signature shall have been proved after his having denied the same, shall be barred from every other defense, and judgment shall be given against him without further proceedings.”
*397 They also cite a number of authorities based upon the article, including the case of Smith v. Union Sawmill Co., 120 La. 599, 45 South. 519, holding that its provisions were equally applicable where the document is being urged by way of defense.
It will hardly be contended that the rule stated in the text of the article can be successfully .invoked against the defendant Texas Company, since it is not the signature of that company which is in dispute. The penalty of the statute is only incurred by the litigant who denies the signature alle'ged to be his. Bradford v. Cooper, 1 La. Ann. 325 ; Bayly & Pond v. Givens, 29 La. Ann. 546 ; Mutual National Bank v. Richardson, 33 La. Ann. 1312.
Nor, in our opinion, is the law stated in the article applicable- to the other defendant, Alice Lewis. The so-called signature to the power-of attorney of March 11, 1908, is attached by “mark” witnessed only by the party designated as agent in the instrument.
Article 326 of the Code of Practice is one of three articles in pari materia. The others are articles 324 and 325, which read as follows:
“Art. 324. When the demand is founded on an allegation, or an act under private signature, which is alleged to have been signed by the defendant, such defendant shall be bound in his answer to acknowledge expressly or to deny his signature.
“Art. 325. If the defendant deny his signature in his answer, or contend that the same has been counterfeited,'the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name.
“But the proof by witnesses shall not exclude the proof by experts or by a comparison of the writing, as established by the Civil Code.”
It is clear from the language of the articles themselves that they apply only to cases in which the parties affected by their provisions are able to write and sign their names. Article 324 refers to an “act under private signature, which is alleged to have been signed by the defendant,” and requires the said defendant “to acknowledge expressly or to deny his signature.” (Italics ours.)
Article 345 is elaborate in its details as to the manner and method in and by which plaintiff “must prove the genuineness” of the signature when it is denied by the defendant, (1)- “eithgr by witnesses who have seen the defendant sign the act;” (2) “who declare that they know it to be his signature, because they have frequently seen him write and sign his name;” (3) by “proof by experts ;” and (4) “by a comparison of the writing.”
When a party who is unable to write or sign his name executes a document by attaching his mark, he does not sign his name thereto; he affixes his mark to the document. While the mark properly affixed and witnessed may have the same effect as a signature of the name, the fact, nevertheless, is that it is not a name but is a mere arbitrary sign or symbol, which, standing by itself, is incapable of identification or of proof.
The rule stated in the articles of the -Code of Practice is based upon the theory that a person who is able to Write and sign his name, and who has a well-defined and characteristic signature, is in a position to determine whether a document alleged or produced against him bears his signature or not. There is no reason, in law or logic, requiring the application of the same rule in a case where the mark of a person unable to write his name is used as a substitute for his signature. The distinction becomes more apparent, and the argument more convincing, upon consideration of the manner and method provided by the Code of Practice (article 325 thereof) itself for the proving of the repudiated signature. How can it be said that a “mark” can be proved by witnesses who have seen the defendant sign the act, or who know the signature represented by it because *399 they have frequently seen the party sign his name, or proved by experts or by comparison of handwriting? A mark has no earmarks, nor definite points, nor outstanding features or characteristics which would enable a litigant to prove or identify it in the manner provided for in the statute.
Plaintiffs’ plea of prescription is founded upon the provisions of article 35£2 of the Civil Code, providing that actions for the nullity or rescission of contracts, testaments, or other acts are prescribed by five years.
The pivotal one of the several transactions before the court for review is the pretended deed of sale of March 12, 1908. This instrument was executed without the authorization of the husband of the vendor. In our former opinion herein we held that the absence of the husband’s signature stamped the deed with nullity, but that inasmuch as the nullity was relative only, defendants were barred from asserting the nullity by the prescription pleaded by the plaintiffs.. The ruling of the court was based upon the assumption that the prescription invoked began to run from the dissolution of the marriage of Alice White and Jerry Lewis by the death of the latter. 'The ruling would be correct if Alice Lewis had been out of possession of the property during the prescriptive period, and had sought, in a direct action, the annulment of the pretended deed; but in view of the proven' fact that she has always been in possession of the property, both before and since the date of the instrument, and as she is urging its illegality by way of answer or exception to plaintiff’s suit, the holding is erroneous.
Defendant Alice Lewis, being always in possession of the property, had the absolute right to either take the initiative and to sue to rescind and annul the sale for want rf the authorization of her husband, or to Stand indefinitely upon her possession and on the defensive with the privilege of asserting the illegality of the sale by way of exception and answer at any time she might be sued by the alleged purchaser for the delivery of the property. This principle of law finds expression in the maxim, “Quse temporalia sunt ad agendum, perpetua sunt ad excipiendum,” and is, also, embodied in article 20 of the Code of Practice, reading:
“Pie who has a right of action to claim what is due to him, has a right yet more evident to use the same cause of action as an exception, in order to preserve his rights.”
This is a fundamental rule of the civil law, which is extended even to the case where defendant may, as in the instant case, by exception or answer set up his cause of action as a defense, though it be prescribed. Delahoussaye v. Dumartrait, 16 La. 91 ; Thompson v. Milburn, 1 Mart. (N. S.) 468 ; Davenport v. Fortier, 3 Mart. (N. S.) 695 ; Bushnell v. Brown Heirs, 4 Mart. (N. S.) 499 ; Lafiton v. Doiron, 12 La. Ann. 164 ; Davis v. Millaudon, 14 La. Ann. 868 ; Lestrapes v. Rocquet, 23 La. Ann. 68 ; Hamilton v. Moore, 136 La. 634, 67 South. 523.
The second estoppel urged against defendants is the one which it is claimed arises from the execution of the deed of January 13, 1910, from Dr. Featherstone to Alice Lewis; it being asserted and argued on behalf of plaintiffs that said deed constituted a ratification by the vendee of the act of March 12, 1908.
We’ do not view the transaction in that light. The purpose of the act of January 13, 1910, was to put back into the name of Alice Lewis property which had been taken out of her name by an act which was recognized by the parties thereto as being illegal. Dr. Featherstone did not intend to acquire the property from Alice Lewis, nor did Alice Lewis and her husband intend to convey the property to Dr. Featherstone. This is not only shown by the testimony, but it is borne out by the fact that simultaneously with the exe *401 cution of the retransfer to Alice Lewis, she, ■with the authorization of her husband, granted a mortgage on the property in favor of Dr. Featherstone to secure a note of her son, Frank White, being a part of the indebtedness growing out of the act of March 12,1908. Obviously, it was not the purpose to vest title to the property in the community existing between Alice Lewis and Jerry Lewis. The purpose was to undo what had theretofore been illegally done, and to restore the status quo prior to the execution of the deed of March 12, 1908.
In order to execute a voluntary ratification the act must be executed with the intention to confirm and ratify, and must evince such intention clearly and unequivocally. No ratification will be inferred where the act can be otherwise explained. Article 2272, Civil Code; Decuir v. Lejeune, 15 La. Ann. 569 ; Gillespie v. Twitchell, 34 La. Ann. 288 ; Breaux v. Sarvoie, 39 La. Ann. 243, 1 South. 614. And in the Succession of Troxler, 46 La. Ann. at page 749, 15 South. 153, applying the law to voluntary confirmation, it was said by this court:
“As between the parties to transactions whose legality is fairly debatable, the doctrine of ratification should not be too rigidly applied. Light should be permitted to be thrown in as far as possible in aid of right.”
The pleas of estoppel and prespription filed by plaintiffs having been thus disposed of adversely to their contentions, brings us to the consideration of the issue of the case as set forth at the outset of this opinion.
Considering the ease from one of its many angles, wTe find it to be fully established by the evidence that Alice Lewis did not acquire the property by purchase from Dr. Featherstone under the deed of January 13, 1910, but that the instrument was a mere retrocession of the property as if the act of March 12, 1908, had not existed. It cannot be considered as a purchase made during the marriage, as it came back to Alice Lewis in the same manner as if the deed of March 12th had been judicially rescinded. By this instrument Dr. Featherstone performed voluntarily that which Alice Lewis could have judicially compelled him to perform. Fulton v. Fulton, 7 Rob. 74 ; Succession of Packwood, 12 Rob. 366 ; Chretien v. Richardson, 6 La. Ann. 3.
Considering the case from another angle, inasmuch as the deed of March 12, 1908, was not authorized by Jerry Lewis) husband of Alice Lewis, the deed was defective and conveyed nothing to Dr. Featherstone, and as he had no title to the property and could not transfer to Alice Lewis any greater right than he had, his deed transferred nothing,, and the title still remained in Alice Lewis, under her original purchase from the New. England Mortgage Security Company, on January 1, 1896. And, further, as Alice Lewis was already the owner of the property, the act of March 12, 1908, being defective and conveying nothing, she could not validly purchase her own property from Dr. Feather-stone, even if, through error, she thought she ■was purchasing his property. Article 2443, Civil Code; Scott v. Leonard, 106 La. 317, 30 South. 841 ; Alderson v. Sparrow, 16 La. Ann. 227.
 In our former opinion we held that as good faith was presumed, and as there was nothing in the record to impugn the good faith of the plaintiffs, they were in the position of innocent third persons dealing upon the faith of the public records, and were entitled to recover on the strength of their title. We were in error in so holding. All that plaintiffs acquired were the rights, whatever they might be, of the heirs of Jerry Lewis in the property in controversy, plus a law suit to establish those rights. They do not show that 'they acquired from a derivative title of record in the name of their vendors or of Jerry Lewis, the father of their vendors, but they rely solely upon the record *403 of the ex parte judgment of possession rendered in the succession of Jerry Lewis. The^ looked no further, and apparently cared to look no further, than these mortuary proceedings. Yet one is bound to ascertain the nature of the title of the property which he seeks to purchase (Augusta Ins. Co. v. Packwood, 9 La. Ann. 74), and in looking up titles is held to examine the same act by act and mortgage by mortgage (Layman v. Vicknair, 47 La. Ann. 686, 17 South. 265). Had this rule been followed by plaintiffs, they would have ascertained from an inspection of the record that there was no title standing in the name of Jerry Lewis and none in the name of the heirs from whom they purchased. They would have learned that in the deed from Dr. Featherstone the description of the property was followed by the words, “being the same property acquired by this vendor from the vendee heretofore,” which notation would have served to put them on notice that the vendor was retransferring to a married woman property which he had previously acquired from her, and by a further inspection of the record they' would have ascertained that the title was especially defective'in that the act of March 12, 1908, was executed under a power of attorney dated March 11, 1908, purporting to have been executed by the constituent, but without the authorization of her husband, < and would have acquired the additional information that the property in question was unquestionably the separate and paraphernal property of Alice Lewis purchased by her before her marriage to Lewis. They would have been put upon inquiry as to the effect of the apparently indirect method adopted of transferring to the community the paraphernal property of the wife by means of a transfer by her to a third person and by that third person back to her.
Conceding the validity of the sale by Featherstone to Alice Lewis, plaintiffs were still required to ascertain, at their peril whether the property was the separate property of the wife or the property of the community, and are not protected by the codal provisions that property purchased during the marriage is presumed to belong to the community. The purchases by the husband as head and master of the community are not to be confused with the purchases by the wife in her own name. The purchase in the latter case being an unusual transaction, puts the public on guard as to the title, and accords the wife the right when her title is attacked to show that the purchase was in fact made with paraphernal funds under her administration, and that the property is her separate and paraphernal property. And this is so whether the investment of the paraphernal funds of the wife appears in the act or not. Metcalf v. Clark, 8 La. Ann. 286 ; Succn. of Burke, 107 La. 82, 31 South. 391 ; Succn. of Pinard v. Holten, 30 La. Ann. 167 ; Clarke v. Lassus, 128 La. 919, 55 South. 576 ; Henderson Iron Works & Supply Co. v. Highouse, 141 La. 803, 75 South. 729.
Had the plaintiffs used but ordinary care and diligence in having the records searched, they could have easily ascertained the defects in the title and that they could not acquire the property from the heirs of Jerry Lewis for the simple reason that these heirs had no right, title, or interest in said property.
Nor for a further reason can the plaintiffs be considered as innocent third persons purchasing in good faith. Their very act of purchase in express terms shows that they were purchasing a litigious right; that they were acquiring with knowledge that the title was in dispute and that they would have to resort to a lawsuit to establish their ownership. Hence, they acquired no greater right than their vendors had. One who buys property with knowledge that the title is in dispute is not an innocent purchaser-; hence has no greater right than his vendors had. Ledoux v. Burton, 30 La. Ann. 576 ; Walling *405 Heirs v. Morefield, 33 La. Ann. 1174 ; Breaux-Renoudet Cypress Lumber Co. v. Shadel, 52 La. Ann. 2098, 28 South. 292.
For the reasons herein assigned, it is ordered, adjudged, and decreed that the former decree of this court reversing the judgment appealed from be set aside, and it is now ordered, adjudged, and decreed that the judgment appealed from be affirmed at the cost of the plaintiffs and appellants.
LAND, J., concurs in decree.