Ledoux vs. Burton.

No. 7031.

JOSEPH V. LEDOUX, ADMINISTRATOR, VS. JOHN C. BURTON.    MRS. A. LEDOUX,
        INTERVENOR.    MRS. A. LE BLANC ET AL. WARRANTORS.

One who buys property with full knowledge that the title to the same is in dispute,
    is not an innocent purchaser, and hence he acquires no greater rights than his
    vendors had.

When the issues in a second suit are the same as those in a previous suit between
    the same parties, the mere fact that additional parties appear in the second suit
    will not prevent the judgment in the former suit from having the effect of *res
    adjudicata*, as between the parties who appeared in both suits, in the same capa-
    cities.

The administrator of a succession can not maintain an action for the recovery of
    real estate, alleged to be the property of the succession, when the heirs of the
    succession are present, and all of them are not made parties to the suit.

APPEAL from the Seventh Judicial District Court, parish of Pointe
    Coupee.  *Semple*, judge *ad hoc*.

L. B. *Claiborne, Edward Phillips*, and *Robert Montgomery* for plain-
tiff and appellee.

*Hewes & Parlange* for defendant and appellant.

The opinion of the court was delivered by

SPENCER, J.  Lovel Ledoux and his wife, Anasie Plantevignes, were
in community, owning a plantation.  The wife died in spring of 1866,
leaving seven children, three of whom were minors and four majors.

On January 25, 1867, after the death of his wife, Lovel Ledoux gave
his note to Amaron Ledoux for $1100, being for a community debt,
and executed a special mortgage on the plantation to secure it.

In April, 1868, Lovel Ledoux made and recorded an acknowledg-
ment of indebtedness to each of his children for $642 85, and to secure
those of age gave a mortgage on same plantation.

On twenty-fourth December, 1868, he caused the said plantation to
be surveyed and divided into seven lots, numbered, respectively, 1, 2, 3,
4, 5, 6, 7; marking lots 1, 2, 3 with his own name, and the other lots with
the name of the major children.  Thereupon he conveyed the lots 4, 5,
6, and 7 to the major children.  Subsequently to these conveyances to
the children, Amaron Ledoux, by public act, of date twenty-ninth March,
1869, released said four lots, 4, 5, 6, and 7, from his said mortgage,
" which four lots of ground *the said Lovel Ledoux has sold and conveyed
to Horace Ledoux, Athenaise Ledoux, etc*," but he specially reserves his
mortgage on the lots 1, 2, and 3, " marked on the plat " of said survey
" as Lovel Ledoux's share," etc.

In 1870 Lovel Ledoux applied for and obtained the administration
of the community, and the whole plantation was inventoried as belong-
ing thereto.  Subsequently, Amaron Ledoux's executrix, he having died,
took judgment by confession against Lovel Ledoux, personally, on this

note, reciting in the petition this waiver and release, and asking and obtaining recognition of the mortgage on the lots 1, 2, and 3.

Early in 1874 she, Amaron Ledoux's executrix (the intervenor in the present suit), issued execution on said judgment, and the sheriff seized the entire plantation thereunder, all the seven lots.

Four injunction suits were brought against this execution: first, by Lovel Ledoux, administrator, claiming lots 1, 2, and 3 as succession property, and not liable to seizure by plaintiff; second, three other injunctions by the major heirs, claiming ownership of lots 4, 5, 6, and 7, reciting the sales to them by Lovel Ledoux, and the release of mortgage by Amaron Ledoux, averring that the said lots were not liable for said debt, that the seizure is illegal, etc., prays for injunction and for a decree declaring said land not subject to seizure for said debt, for damages, and for general relief.

The answer of Mrs. Anna Ledoux, executrix, is as follows, in each of the three injunction cases of the children, substituting for "lot 7" the lot involved in each particular case:

"Now comes Mrs. Anna Ledoux, executrix of the estate of Amaron Ledoux, deceased, and one of the defendants in this suit, and for answer to plaintiffs' petition says, she denies generally all the allegations therein contained; alleges that if any property belonging to plaintiffs has been seized by the sheriff under the writ of *fieri facias* issued against Lovel Ledoux in the suit No. 1589 of the docket of this court, the same was done entirely without the knowledge, authority, or consent of this respondent, who was plaintiff in said suit, or of her attorney therein. And she has given the sheriff orders to release from seizure all property not belonging to Lovel Ledoux, the defendant in said suit, and particularly the lot No. 7, described in plaintiffs' petition. Wherefore, she prays, etc. Signed by her attorney."

The evidence introduced was, by plaintiffs in injunction, their deeds, the release, and proof of damages. By defendant, that she had ordered the sheriff to release these lots, and that neither she nor her attorney had directed, or been cognizant of, said seizure.

The judgments were as follows: "That the injunctions issued in this cause be made perpetual, and that the property described in plaintiff's petition as lots Nos. 4 and 5, be recognized as the property of Augustine Lacour, wife of J. D. Lacour, and not subject to seizure for debts due by Lovel Ledoux, Senior, to Mrs. Anna Ledoux, widow and testamentary executrix of Amaron Ledoux, deceased; * * * that she pay costs, and that plaintiff's demand for damages be dismissed as in a case of nonsuit." Signed December 21, 1874.

These judgments were never appealed from. They are pleaded in this cause as *res adjudicata*.

37

The injunction taken by Lovel Ledoux against the sale of lots 1, 2, and 3 was finally decided by this court (27 An. 100) holding the said lots to be succession property and not liable to seizure.

In the midst of these litigations, to wit, in June, 1873, J. C. Burton, defendant herein, made an agreement with the Ledouxs to buy the whole place at $8000, to be paid when title was perfected. The claim made for him, that he is an innocent purchaser, is utterly untenable. He agreed to buy with full knowledge, and if he has paid out his money before he acquired a perfect title, he has no one to blame but himself, as he was under no obligation to do so. He has no other or greater rights than his vendors, and must stand or fall with them.

On third May, 1875, Lovel Ledoux filed a final account of administration, which was opposed by Mrs. Amaron Ledoux, executrix, for various reasons. J. C. Burton, who had bought a claim from Olympe Boisse against the community, also opposed it because Mrs. Amaron Ledoux's claim was placed on it.

The history of this branch of the case will be found reported in 28 An. 562. That proceeding related to matters not involved in this suit, which is confined to the issue of ownership of lots 4, 5, 6, and 7. This suit arose as follows: After the decision in 28 An. 562, Lovel Ledoux was dismissed from the administration, and Joseph V. Ledoux, the plaintiff herein, was appointed in his stead as administrator. This new administrator refused to inventory lots 4, 5, 6, and 7 as part of the succession, or to give bond for their value. Mrs. Ledoux, executrix, took a rule to compel him to do these things, which ultimated in a decree of the parish court directing him to institute suit to test the title and to recover possession of said lots.

This suit is brought by him for that purpose, against J. C. Burton, who is in possession, and who has called in his warrantors to defend it, i. e., the major children.

Mrs. Ledoux, executrix, intervenes and joins in his demand, alleging simulation and collusion between the former administrator, the present one, Burton, and his vendors. The court rendered judgment decreeing said lots to belong to said community estate and directing plaintiff as administrator to take possession thereof. Defendant and warrantors appeal.

So far as we can discover there seem to be but two debts against the community, to wit, the one held by Mrs. Ledoux, executrix, and the one due Olympe Boisse, held by defendant Burton.

The questions presented and necessary for us to decide are—

First—Are the judgments in the three injunction cases, hereinbefore described, res adjudicata against Mrs. Ledoux, executrix; and do they bar her from claiming the subjection of lots 4, 5, 6, and 7 to her debt?

Ledoux vs. Burton.

For if they do bar her demands and claims, there are no creditors of the community to be benefited, since Burton, the defendant, necessarily by his attitude in this case disclaims the right of enforcing his claim on said lots.

Second—If there are no creditors of the community who can claim the benefit of the return of these lots to the community, can its administrator as such reclaim them for the benefit of the minor heirs ? Has he legal capacity to do so ?

Third—If the administrator can bring such demand, when there are no creditors who can profit by it, what is the legal effect of a sale by the surviving husband, before an administration is inaugurated, of the whole or part of the community effects ?

First—As to the plea of *res adjudicata*. The intervenor's counsel contend that in said injunction suits the ownership of these lots was not put at issue. That the parties thereto are not the same as in this suit; "that the thing demanded is not the same." We think that the counsel are mistaken. The plea of *res adjudicata* as between two individuals can not be avoided because in the second suit there are other persons parties who were not such in the first suit. There is no denying the fact that in those injunction suits Mrs. Ledoux, executrix, was party on the one side, and the major children of Ledoux on the other side. There is no disputing the fact that the same parties are at issue in this suit. The issues here are, the ownership of and the validity of the said children's title to said lots, and the ultimate liability of said lots for the payment of intervenor's claim. The issues in the injunction suits were the same. The plaintiffs in injunction distinctly allege their ownership, set forth their title, set forth the release of mortgage, and aver that by reason of these things the property is theirs and is exempt from said debt, and pray for such exemption, for damages, and for general relief. The defendant in injunction (Mrs. Ledoux, executrix,) *denies generally plaintiff's allegations*, and disclaims any intentions to seize their property, to wit, the lots in question. This general denial put at issue plaintiff's ownership—put at issue the fact of release and the exemption pleaded. The release of the lots by the defendant in injunction and her plea thereof could not have the effect of destroying this issue. It might perhaps be construed into a judicial confession of the truth of plaintiff's allegations; and if so construed, it was only another and stronger reason for the judgments which were rendered perpetuating the injunctions, recognizing plaintiff's ownership of the property and its exemption from defendant's debt.

All the identities constituting the thing adjudged are present. In both suits the parties are the same; their capacities are the same; the thing is the same, to wit, lots 4, 5, 6, and 7; the cause of action is the

same, to wit, ownership and exemption of the property. The plea of *res adjudicata* is therefore good against the intervenor, and she has therefore no legal right or interest in questioning the titles of defendants. Nothing is shown *subsequent to the date of said judgments*, December 21, 1874, from which can be inferred any renunciation by these defendants of the benefits of said plea.

Second—Can the administrator, where there are no creditors, maintain a real action like the present, when the heirs of the estate he administers are present, but are not all made parties to the suit? In Hart vs. Boni, 6 La. 99, this court held with reference to this subject, that " in suits by executors to recover the deceased's property, the heirs if interested and present should be made parties to the action." It is, besides, a fair deduction from article 123 C. P. that executors and administrators can not where the heirs are present maintain alone real actions like the present. The propriety of such a rule is made manifest by the case before us. The minor heirs, who are no parties to this suit, have alone the right to question the validity and reality of the sales by their father to their co-heirs. *Non constat*, that they will ever desire to question it. It is therefore unnecessary for us to discuss the effect of these sales by the surviving husband in community, as the necessary parties are not before us for its determination.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed, and it is now ordered and decreed that the demands of the intervenor be rejected and disallowed, and that the plaintiff's demands be rejected as in case of nonsuit. The costs of both courts to be borne by plaintiff and intervenor.