183 So. 229

ARKANSAS–LOUISIANA GAS CO. v.
PARKER OIL CO., Inc., et al.

No. 34557.

Jan. 10, 1938.

On Rehearing June 27, 1938.

Second Rehearing Denied Aug. 5, 1938.

Robert Roberts, Jr., and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for appellant.

Foster, Hall, Barret & Smith and Lee & Lee, all of Shreveport, for appellees.

Cobb & Saunders, of New Orleans, amicus curiæ.

ODOM, Justice.

Plaintiff, alleging that it was in physical possession of a narrow strip of land, 25 feet wide and 726 feet long, in the Rodessa oil field, brought this suit against defendant to protect its possession. It is alleged that the strip of land was part of a larger tract which it held under an oil and gas lease from the Rodessa Oil & Land Company, dated February 7, 1934, and that it had taken physical possession of the leased tract by drilling thereon several producing oil wells.

In its original petition, plaintiff alleged that defendant had gone upon this narrow strip of land, without right and in violation of plaintiff's right of possession, for the purpose of exploring it for oil and gas, and that, in so doing, defendant was a trespasser. It ruled defendant to show cause why it should not be enjoined from further trespassing.

The rule was heard and dissolved, the judge citing as authority for his ruling the case of United Gas Public Service Company v. Arkansas-Louisiana Pipe Line Company, 176 La. 1024, 147 So. 66.

After the court so ruled, the defendant erected a drilling rig on the strip of land, drilled and brought in a producing oil well.

Plaintiff then filed an amended petition, in which it reiterated its former allegations and further alleged in substance that, since the original suit was filed, defendant continued its trespass by drilling on the land and had brought in a producing oil well and would, if not enjoined by the court, market the products of the well, which belonged to the plaintiff under its lease which gave it the exclusive right to extract minerals from the land.

Plaintiff further alleged that defendant had conducted its drilling operations with full knowledge of plaintiff's rights as disclosed by the records of the parish, after defendant had been notified in writing of plaintiff's rights, and after plaintiff had filed suit against it, in which suit plaintiff had set out in detail its title and claim and had specifically charged that defendant was a trespasser on the land, and had stated the reasons for making the charge.

For these reasons, plaintiff alleged that defendant was a trespasser in legal bad faith; that defendant should be ordered to remove its equipment from the premises and enjoined from further producing oil from the well; that plaintiff was entitled to all the oil previously extracted, or its proceeds, free of all cost and expense of production, including the expense of drilling. It prayed for judgment recognizing its exclusive right to explore the land for minerals, ordering defendant to remove its equipment, enjoining it from further trespassing upon the property, and recognizing plaintiff to be the owner of the oil and gas already produced or its proceeds, free of all expense of production including the expense of drilling.

Defendant excepted to both the original and the amended petitions on the ground that they set out no cause or right of action. The exceptions were overruled, and defendant answered.

It admitted the execution of the lease claimed by plaintiff but especially denied that it conferred upon plaintiff any right to produce oil and gas from the strip of land involved. It denied that plaintiff was in possession of, or had a right to possess, this strip of land at the time the suit was filed. It admitted that it had entered upon the land and drilled a well thereon under and by virtue of a lease which it acquired by assignment from R. J. Reinke; that Reinke had acquired the lease from Glenn Fitts, the owner of the strip of land, and that its operations were conducted in good faith, upon the advice of counsel that Fitts, who leased to Reinke, owned the strip of land in fee under a valid title.

Defendant admitted that it conducted drilling operations after plaintiff filed its original petition, but alleged that it had done so on the advice of counsel and in good faith.

The answer sets out at great length and in detail Glenn Fitts' chain of title to the 25-foot strip of land, and it is alleged that, should the court hold that the Rodessa Oil & Land Company, plaintiff's lessor, is vested with title to the strip of land on which the well was drilled and that plaintiff held a valid lease thereon, then, because defendant acted in good faith, it is entitled to be reimbursed the cost of drill-

ing, equipping and operating said well. Assuming the position of plaintiff in reconvention, it prayed for judgment against plaintiff for its expenses, or, in the alternative, that the court appoint a judicial sequestrator to operate the well until it produced sufficient revenue to repay all its expenses.

In a written opinion, the district court held that plaintiff's lease covered this strip of land, that it was in possession, and that it had the exclusive right to explore it for minerals; and held further that defendant's operations thereon were conducted in good faith and therefore it should be reimbursed its expenses out of the proceeds of the products of the well, all matters of accounting to be deferred. There was judgment accordingly. The injunction prayed for by plaintiff was granted.

Plaintiff appealed from the judgment. Defendant answered the appeal, praying that there be judgment rejecting plaintiff's demands in toto, and, in the alternative, that, if the court should uphold plaintiff's title, the judgment ordering that defendant be reimbursed its expenses be affirmed.

This is not an action to try title to real estate, nor is it a possessory or petitory action. Originally it was an action against an alleged trespasser to protect possession. One who is in physical possession of a tract of land under a lease which gives him the exclusive right to possess it for lawful purposes may protect his possession against a trespasser by an injunction and may recover damages. Esmele v. Violet Trapping Company, 187 La. 728, 175 So. 471; Pure Oil Operating Company v. Gulf Refining Company, 143 La. 284, 78 So. 560, and cases there cited; Police Jury v. Kidder et al., 4 La.App. 296; Bright v. Bell et al., 113 La. 1078, 37 So. 976.

It is stated by counsel for plaintiff in their brief that the question of title to the property involved is not at issue. While that is true, yet in a case like this, one where possession of a tract of land is involved, and where the right to possess is inseparably connected with ownership, a discussion of the title of the person under whom the litigants possess or claim the right to possess, cannot be avoided.

In this case we note that both plaintiff and defendant put in evidence the title of the owner under whom they claim the right of possession. As neither the Rodessa Oil & Land Company, plaintiff's lessor, nor Glenn Fitts, defendant's lessor, is a party to this litigation, what we here say regarding the title to this strip of land is not intended to nor can it affect their rights.

The strip of land on which defendant drilled the oil well is a part of the tract covered by plaintiff's lease. While plaintiff did not drill on this 25-foot strip of land, it did drill several wells, under its lease, on the larger tract of which this strip is a part. The tract of land covered by plaintiff's oil and gas lease was owned, prior to 1908, by the Rodessa Land & Development Company (not plaintiff's lessor) and sold by that company to R. J. Riddle and by Riddle sold to the Rodessa Oil & Land Company, plaintiff's lessor, in 1909.

On March 3, 1908, the Rodessa Land & Development Company, the then owner of the tract now covered by plaintiff's lease, acting under the provisions of Act 134 of 1896, laid off a portion of said tract into squares, lots and streets, made a plat thereof and had it recorded in the notarial records of Caddo Parish, under the caption "Parker Addition to Rodessa, La." Rodessa was then an unincorporated village with squares, lots and streets laid off and platted. The village was never incorporated. The "Parker Addition" lies adjacent to the original village.

The land included in the "Parker Addition" lies west of and adjacent to an 11-acre tract now owned by Glenn Fitts. The original plat of the "Parker Addition" bears the following legend: "We hereby dedicate to public use all streets and alleys in above subdivision", signed "Rodessa Land & Development Company, By J. D. Lee, President". The plat also has endorsed upon it the following: "No. 5006. Filed and Recd. March 3 1908. William Haynes, Dy. Clerk & Ex Off. Dy. Recorder."

Among other streets shown on this plat is one named "Parker Street", which is 50 feet wide and runs north and south. As shown by the plat, it is west of and adjacent to the 11-acre tract owned by Glenn Fitts.

As a matter of fact—and this is admitted—not a square or lot of the "Parker Addition" to the village of Rodessa was ever sold, and none of the streets shown on the plat was ever used by the public. The land when platted was open, under fence, and was being cultivated as a farm, and continued to be so fenced and cultivated. It is not suggested or claimed that the streets shown on the plat were ever used by the public. In fact, it is admitted that they were never opened or used.

For that reason, the Rodessa Oil & Land Company, the owner of the tract of land out of which the "Parker Addition" to the village of Rodessa was carved and now under lease to plaintiff, presented a petition to the police jury of Caddo Parish, on March 9, 1936, twenty-eight years after the plat was recorded, in which petition it represented:

That it was the owner of the S½ of the NW¼, Sec. 23, T. 23 N R., 16 W, with the exception of 11 acres known as the Stewart property (now owned by Glenn Fitts); that the Rodessa Land & Development Company, its predecessor in title "dedicated what is commonly known as the Parker Addition to the Town of Rodessa embracing the S½ of the NW¼ of Section 23, and caused a plat of said Parker Addition to be made and filed * * * March 3, 1908; * * * *that all of the property in said Parker Addition has been cultivated as farm property, that not a single lot in said subdivision has ever been sold nor a single street or alley open to use,* with the exception of the main highway lying to the west of the Kansas City Southern Right-of-Way and that there is not now or has there been any need for the streets and alleys shown on the annexed map with the exception of the main highway just referred to. Petitioner accordingly shows *that the public*

*has never used but has abandoned any right to the use of the streets and alleys of the Parker Addition* with the exception just noted." (Italics are the writer's.)

The land company prayed that the police jury by appropriate resolution "abandon unto petitioner all rights and claims that it may have to the streets and alleys shown on said attached map with the exception of the main highway lying to the west of the Kansas City Southern Right-of-Way".

On the same day, the following motion was adopted by the police jury:

"On motion of Mr. Fuller, seconded by Mr. Williamson, the streets and alleys in the Parker Addition to the town of Rodessa, dedicated for public use as recorded in the office of the Clerk of Court of Caddo Parish, March 3rd, 1908, be abandoned, and ownership restored to the present owners, with the exception that it shall not affect the main highway lying to the West of the Kansas City Southern right of way, designated as State Highway No. 8, and that a proper recording be made in the office of the Clerk of Court of Caddo Parish."

Now the 25-foot strip of land involved in this controversy and on which defendant drilled the well is the east half of Parker Street, which street, as we have said, is 50 feet wide and is west of and adjacent to the 11-acre tract of land owned by Glenn Fitts.

A few days after the police jury cancelled the dedication of the streets and alleys shown on the plat of the "Parker Addition", Glenn Fitts, who owned the 11-acre tract and who, after the cancellation and so-called "abandonment", claimed to own the east half of Parker Street, leased that strip of land to R. J. Reinke, and Reinke immediately assigned the lease to the defendant oil company; and it is by virtue of this lease that defendant claims the right to explore the strip of land for minerals.

Counsel for defendant argue first that, in as much as all of the streets, including Parker Street, as shown on the recorded plat of the "Parker Addition", had been dedicated to public use, plaintiff had no right to possess and could not legally hold possession of any of said streets, even though its lease covered a tract of land in which the "Parker Addition" was embraced and expressly included the streets, because a private individual cannot gain or hold possession of real estate, the possession of which is already vested in the public. They cite cases in support of this general principle.

They argue secondly that, when the police jury cancelled the dedication and "abandoned" the streets, a fee title to that portion of Parker Street, lying east of its center line, vested in Glenn Fitts, who owned the property adjacent thereto.

In support of the latter argument, they cite Act 151 of 1910. That act, according to its title, is one "Authorizing police juries and municipal corporations to work and set aside dedications of roads, streets and alley-ways, when same has [have] been abandoned, or no longer needed for public use".

Section 1 of the act provides that police juries and municipal corporations shall have full power and authority "in their discretion, to revoke and set aside the dedication of all roads, streets and alley-ways heretofore laid out and dedicated to public use, within their respective limits *when such roads, streets and alley-ways have been abandoned, or are no longer needed for public purposes*". (Italics are the writer's.)

Section 2 of the act says: "upon such revocation, the ownership of the soil embraced in such roads, streets, and alley-ways up to the center line thereof shall revert to the then present owners of the land contiguous thereto."

But Glenn Fitts, under the facts disclosed by the public records and admitted by defendant's counsel, could not and did not acquire fee title to Parker Street up to the center line thereof by virtue of the so-called dedication and abandonment. The only theory under which he could have acquired title is that the fee was lost by the owner who made the dedication and was acquired by the public.

But here neither did the owner lose nor did the public acquire the fee. When we consider the admitted facts and circumstances, the reason is clear and manifest. The dedication by the owner, as evidenced by the written inscription on the plat, was in favor of the public. But the public, in whose favor the dedication was made, never accepted it.

It is settled by repeated decisions of this court that:

"A dedication to public use is inchoate only, until after its acceptance, which acceptance may be shown by authentic act or the use of the property in the manner and for the object designated."

The above language is quoted from the case of David and Livaudais v. Municipality No. 2, 14 La.Ann. 872, decided in 1859. The same language was quoted with approval in the case of Jaenke v. Taylor, 160 La. 109, 106 So. 711, decided in 1926.

There are numerous other decisions of this court to the same effect, many of which are cited in Jaenke v. Taylor, supra. The identical question was passed upon by the Court of Appeal, Second Circuit, in the case of Jouett v. Keeney, 17 La.App. 323, 136 So. 175, where the court reviewed the jurisprudence of this State from Martin's Reports to date. It is unnecessary to repeat the citations here.

It may be stated as a rule, deduced from the opinions of this and other courts, that the dedication by the owner of portions of his land for "public use", as streets, alleys, parks and squares, merely confers upon the public the right to use them, and that, until and unless the right is exercised by the public, the dedication is ineffective; and further that, once the public exercises its right to use the property dedicated by using it for the purposes specified in the act of dedication, the dedication is complete and irrevocable and the owner is divested of the fee as completely as if he had made a sale of the streets, alleys, etc., to the public.

For these reasons, the legislature decreed, in Act 151 of 1910, that, when roads and streets are abandoned and no longer needed for public use, the dedication is subject to revocation by the police jury or municipal authorities, and upon such revocation the ownership of the soil in such roads and streets up to the center line thereof shall revert to the owners of the land contiguous thereto.

It is clear enough that this act relates only to such dedications as were consummated and rendered effective in some manner required by law, because it is only in such cases that the fee passes from the donor to the public, and certainly the legislature did not intend thus to dispose of private property.

The result is that Fitts gained nothing by these proceedings, and, having no right or title to the strip of land, he could confer no rights or privileges upon his lessee.

Counsel for defendant say, at Page 34 of their brief, that the plat and the dedication thereunder were accepted by the parish engineer of Caddo Parish, who wrote thereon the following: "I hereby approve map as being correct as to acreage and as being in compliance with the provisions of Act 134 of 1896", signed "L. Z. Crawford, Parish Surveyor".

The parish engineer had no authority to accept the dedication for the public. Not only that, if he thought he had such authority, it is evident that he did not intend to exercise it for the public. All he did was to approve the map as being correct as to acreage and in compliance with the act of the legislature.

In plaintiff's lease mention is made of the "Parker Addition", as well as the original village of Rodessa. In precise language the Rodessa Oil & Land Company leased to plaintiff the lots, squares, etc., "together with all streets and alleys lying next to and adjoining said blocks and lots". Then follows the stipulation:

"Subject to the public's presently existing right of passage over said streets and alleys, comprising the town of Rodessa, Louisiana, situated in Section 23, Township 23 North, Range 16 West, and the Parker Addition thereto situated in Sections 22 and 23."

Counsel argue that, by assenting to this stipulation, plaintiff recognized the streets as being public property. The language does not so indicate. Plaintiff accepted the lease of the streets "subject to public's presently existing right of passage" over them. As a matter of fact, up to the date on which the lease was made, the dedication had not been set aside by the police jury. And it is conceivable that, up to the time it was set aside, the public might have exercised its right of use, although more than a quarter of a century had elapsed since the dedication was made and no use of the streets had been made by the public during that time.

The Rodessa Oil & Land Company petitioned the police jury to set aside the dedication at the instance of plaintiff, and it is said that this was a recognition that the streets had been dedicated. But the petition presented to the police jury is contrary to this theory, as the following quotation therefrom shows:

"Petitioner further shows that all of the property in said Parker Addition has been cultivated as farm property, that not a single lot in said subdivision has ever been sold nor a single street or alley open to use with the exception of the main highway; * * * that the public has never used but has abandoned any right to the use of the streets and alleys."

It was represented, not that the public had abandoned the streets, but had abandoned "any right to the use of the streets and alleys".

Evidently the purpose of plaintiff and its lessor in asking that the dedication be set aside was to obviate such complications as might arise in case the public should elect to exercise its right to use the streets later.

The remaining question is whether the defendant is entitled to retain possession of the well until it is reimbursed the expense of drilling and equipping it. This, of course, involves the question of its good faith, which is especially pled. It claims the rights of a possessor in good faith, one of which, according to Clause 2, Article 3453 of the Revised Civil Code, is:

"The right which such a possessor has, in case of eviction from the thing reclaimed, to retain it until he is reimbursed the expenses he may have incurred on it."

A possessor in good faith, says Article 3451 of the Revised Civil Code, "is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact".

The possessor in bad faith "is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective". Civil Code, Article 3452.

In the case of Southwestern Gas & Electric Company v. Nowlin, 164 La. 1044, 115 So. 140, this court discussed at length not only the general question of who are possessors in good faith and bad faith but their rights as well. After relating the facts of the case as disclosed by the record and after quoting Articles 3451 and 3452 of the Civil Code and citing several cases, the court said (page 142):

"Since defendant knew, when he took possession, that plaintiff was claiming title to the property, and since plaintiff has established his title, it must be held that defendant was a possessor in bad faith, in contemplation of law, and he must abide the consequences following such a possessor."

One of the cases cited by the court is McDade v. Bossier Levee Board, 109 La. 625, 33 So. 628, where the court said (page 632):

"The very fact of plaintiff's having made inquiry shows that he suspected the defectiveness of his title and that his error was one of law and not of fact. Applying the law to this situation, the possession of plaintiff was in legal bad faith."

Another case cited is Ledoux, Administrator v. Burton, 30 La.Ann. 576, where it was held that: "One who buys property with full knowledge that the title to the same is in dispute, is not an innocent purchaser."

Still another is the leading case of Heirs of Dohan v. Murdock, 41 La.Ann. 494, 6 So. 131. Referring to this case, the court said (in the Nowlin Case):

"In the same case it was held that a misconception of the law, no matter how honestly it may be entertained, does not have the effect of making one a possessor in good faith."

The holding in these cases, if applicable, is fatal to defendant's pretensions of good faith. Its officers and representatives knew perfectly well before they took possession of this property that plaintiff claimed not only that it had the right to possess but that it was in physical possession of the property. It was informed of these facts by letter and later by the filing of the suit. Not only that, they knew that this strip of land was a part of a larger tract on which plaintiff had the lease, and they could see plaintiff's operations in the drilling of wells thereon. They had notice unmistakably certain that defendant's right to take possession of the land was seriously disputed by plaintiff.

Furthermore, the public records of the parish showed unmistakably that there was no consummated dedication of the streets in the "Parker Addition" to Rodessa. The so-called dedication of these streets and their subsequent abandonment are set out in defendant's answer and relied upon as a link in Glenn Fitts' chain of title. In answer defendant made special reference to the petition presented to the police jury for a cancellation of the dedication, and at the trial defendant offered it in evidence. It is recorded in the conveyance records

of the parish. It shows on its face that not one of the streets of the "Parker Addition" had ever been opened or used by the public and that not a lot or square had ever been sold. Therefore, the defect in Fitts' title was patent on the face of the records.

So that, if it be true that defendant was in error, such error was one resulting from a misconception of the law and not due to ignorance of the facts. In Heirs of Dohan v. Murdock, supra, this court, speaking of errors resulting from a misconception of the law, said (page 132):

"Now, under our jurisprudence, the principle is well settled that such an error is incompatible with good faith, as characterizing the possession of an evicted vendee of immovable property."

But defendant's counsel argue that, in as much as the cases cited all relate to petitory actions or title to real estate, they have no application here. It is true that those cases involve ownership of real estate, and the court had to determine the question of title. But the question of the rights of adverse possessors was also involved, and for that reason the court was called upon to interpret the articles of the Civil Code relating to "possessors" in good or bad faith and to pass upon their rights. It is not argued that the interpretation given those articles by our predecessors is unsound, and the only reason suggested why the effect of those interpretations should not be applied in this case is that this is not one involving title to real estate.

But defendant has injected into this case the question of its good faith and has made

that one of the major issues involved. It claims the right accorded to a possessor in good faith as prescribed in Article 3453 of the Code, which is to "retain it"—the well, in this case—"until he is reimbursed the expenses he may have incurred on it". We are called upon to say whether or not defendant acted in "good faith", according to the codal meaning of that term. This court has said in the cases cited what the term "good faith" means, and as to the particular point here raised, what is said in them is appropriate here.

In the case of Gregory v. Thomas, 20 Wend., N.Y., 17, the court said:

"To say that a man takes in good faith, when he acts with notice, and of course under conscious hostility to another who has before taken a similar title, would be a legal solecism."

Counsel cite and quote at length from the case of Cooke v. Gulf Refining Company, 135 La. 609, 65 So. 758. The inference which counsel seek to draw from what is quoted is that the articles of the Code relating to good faith or bad faith do not apply to cases of trespass where property is held under an oil and gas lease. But the court did, in that case, give the defendant, who was a trespasser, the benefit of the codal provisions relating to possessors in good faith, as shown by the third section of the syllabus.

In the case of Nabors Oil & Gas Company v. Louisiana Oil Refining Company, 151 La. 361, 91 So. 765, it was held, according to the fourth paragraph of the

syllabus, which is a correct statement of the ruling, that:

"One becomes a possessor in bad faith from the moment that the defect in his title is made known to him, or is declared in a suit brought by the owner to recover the property. If, whether acting upon his own judgment or the advice of others, he refuses, when so informed or sued, to surrender the property, and it is wrested from him by judicial decree, his status as a possessor in bad faith is established and he becomes liable accordingly."

In that case, as in the one at bar, the defendants acted upon the advice of counsel and asserted good faith. But the court held that they were in bad faith. There, as here, they proceeded with full knowledge of all the facts and after suit was filed against them. A rehearing was granted in that case, and for that reason counsel say that the ruling was set aside. But the rehearing was granted and the original judgment set aside on an entirely different issue. The ruling on the question of good faith was not mentioned in the opinion on rehearing.

In the recent case of Ruth v. Buwe et al., 185 La. 204, 168 So. 776, it was said (page 779):

"Furthermore, defendants in any event became possessors in bad faith on February 2, 1933, when the present suit was instituted against them."

Under the circumstances here disclosed, we do not think that the fact that defendant acted under advice of counsel makes it a possessor in good faith. In the case

of Heirs of Dohan v. Murdock and of Nabors Oil Company, supra, the defendants proceeded under advice of counsel, and yet were held to be in legal bad faith.

Plaintiff has not elected to keep the improvements—the well and its equipment—made on the land by defendant. It alleges that the well is a detriment to its lease, there being several other wells in close proximity, and prays that the entire equipment be removed from the premises.

For the reasons assigned, the judgment appealed from is affirmed in so far as plaintiff was decreed to be the owner of all oil, gas and other minerals produced from the well drilled by defendant, and enjoining and restraining the defendant from drilling any well in search of oil or gas upon any portion of the tract of land involved and from producing or continuing to produce oil, gas or other minerals therefrom, and commanding defendant to remove from the premises all equipment and material placed by it thereon. It is further ordered that said judgment be and is hereby reversed and set aside in so far as it was decreed that plaintiff's ownership of the oil, gas and other minerals produced from the well was "subject to the right of the defendant Parker Oil Company, Inc. to be reimbursed out of the proceeds of such products, the cost and expense of drilling, equipping and operating said well"; and reversed and set aside in so far as it was decreed that "the legal effect of writs of injunction in accordance with the provisions (b) and (c) of this judgment, however, to be suspended until an accounting between the parties and

the reimbursement of defendant to the extent and in the manner provided for herein"; all costs to be paid by defendant.

HIGGINS, J., absent.

### On Rehearing.

ROGERS, Justice.

On March 3, 1908, complying with the provisions of Act 134 of 1896, the Rodessa Land & Development Company, which owned the Southwest Quarter of Section 23, Township 23, North, Range 16 West, with the exception of an eleven acre tract owned by J. D. Bickham, created a subdivision known as "Parker Addition" to the town of Rodessa, surveyed the subdivision, made a map thereof and formally dedicated to public use the streets and alleys shown thereon. This map with the approval of the parish surveyor endorsed thereon was recorded in the conveyance records of Caddo Parish in Book 50 at page 73.

The Rodessa Land & Development Company conveyed the property composing the Parker Addition to the Rodessa Oil & Land Company, and on February 7, 1934, the Rodessa Oil & Land Company executed in favor of the Arkansas-Louisiana Gas Company an oil and gas lease covering the larger part of the town of Rodessa and also the Parker Addition, which adjoins the town on the North.

The lease contained the following stipulation in reference to both the town of Rodessa and the Parker Addition thereto, viz.: "together with all streets and alleys lying next to and adjoining said blocks and lots,

subject to the public's presently existing right of passage over said streets and alleys, comprising the town of Rodessa, Louisiana, situated in Section 23, Township 23 North, Range 16 West, and the Parker Addition thereto situated in Sections 22 and 23, Township 23-N, Range 16-W, Caddo Parish, Louisiana, as per plat of said town and addition as recorded in the records of Caddo Parish, Louisiana, aggregating 520 acres, more or less."

On April 9, 1936, the Rodessa Oil & Land Company, the lessor of the Arkansas-Louisiana Gas Company, at the request of its lessee, filed a petition with the Police Jury of Caddo Parish to have the streets and alleys in the Parker Addition closed.

The Rodessa Oil & Land Company alleged in its petition to the Police Jury that it was the owner of the Parker Addition to the town of Rodessa, embracing the South Half of the Northwest Quarter of Section 23, with the exception of eleven acres identified as the Stewart property on the map annexed to the petition.

The Police Jury, pursuant to the application of the Rodessa Oil & Land Company, passed a resolution abandoning the streets and alleys of the Parker Addition and restoring their ownership to the present owners.

The action of the Police Jury was taken under the authority of Act 151 of 1910, authorizing police juries and municipal corporations (the Parish of Orleans excepted) to revoke and set aside dedications of roads, streets and alleys when they have been abandoned or are no longer needed for public use.

The eleven acre tract designated as the Stewart property on the map annexed to the petition of the Rodessa Oil & Land Company addressed to the Police Jury of Caddo Parish was owned by Glenn Fitts at the time the Police Jury adopted its resolution abandoning the streets and alleys in the Parker Addition to the town of Rodessa, Fitts having acquired the eleven acre tract by mesne conveyances from J. D. Bickham, who owned the tract at the time the Parker Addition was created by the Rodessa Land & Development Company.

The eleven acre tract owned by Fitts, as shown by the map, is bounded on three sides by the streets, alleys, blocks and lots comprising the Parker Addition. A street designated on the map as Parker Street, on which it has a frontage of 726 feet, forms the Western boundary of the tract.

On April 17, 1936, Glenn Fitts executed an oil and gas lease to R. J. Reinke, covering a strip of land 25 feet in width and 726 feet in length lying along and adjoining the west side of his eleven acre tract. The tract of land covered by this lease is in reality the east half of Parker street adjacent to the eleven acre tract owned by Fitts. On June 29, 1936, this lease was assigned by Reinke to the Parker Oil Company, Inc.

In the latter part of June, 1936, the Parker Oil Company began to drill an oil well on the strip of land covered by the lease from Glenn Fitts. Shortly thereafter, the Arkansas-Louisiana Gas Company, as lessee in possession under its mineral lease from the Rodessa Oil & Development Company, brought this suit to enjoin the drill-

ing operations of the Parker Oil Company. Upon the hearing of the rule nisi the temporary injunction was denied by the trial judge. Thereafter, the Parker Oil Company completed the well as a producer of oil in commercial quantities. The Arkansas-Louisiana Gas Company then amended its petition and alleged that the drilling and completion of the oil well was a trespass upon the tract of land of which it was in possession as lessee. The prayer of the amended petition was that the Parker Oil Company be enjoined from operating the oil well; that it be required to remove its equipment and materials from the premises; and that plaintiff be recognized as the owner of the exclusive right to produce oil, gas and other minerals from the property.

The trial on the merits resulted in a judgment in favor of the Arkansas-Louisiana Gas Company and against the Parker Oil Company. The trial judge held that the lease of the Arkansas-Louisiana Gas Company covered the strip of land involved in the suit and that plaintiff was in possession of the strip, but that the operations of the Parker Oil Company thereon were conducted in good faith and therefore it was entitled to the reimbursement of the drilling costs from production before the injunction granted should become operative.

The Arkansas-Louisiana Gas Company appealed from the judgment. The Parker Oil Company answered the appeal and asked that the judgment be reversed and plaintiff's demands be rejected; and, in the alternative, that, if plaintiff's title

should be upheld, the judgment be affirmed so far as it allowed defendant the right to be reimbursed for the cost of drilling, equipping and operating the oil well.

After hearing the case on appeal, this court affirmed the judgment decreeing plaintiff to be the owner of the product of the oil well drilled by the defendant, enjoining defendant from drilling or operating any well upon the property and ordering defendant to remove all its equipment and material therefrom.

This court reversed the judgment decreeing that plaintiff's ownership of the product of the well was subject to the right of the defendant to be reimbursed the expenses of drilling, equipping and operating the well.

On the application of the defendant Parker Oil Company a rehearing was granted and the case has been heard for the second time by this court.

The primary question to be determined is the nature and effect of the dedication of the streets and alleys in the Parker Addition by the Rodessa Land & Development Company and the revocation of that dedication by the Police Jury on the application of the Rodessa Oil & Land Company.

Plaintiff contends that there never was any effective dedication because it never was expressly accepted by the proper authorities on behalf of the public and the streets and alleys never were used by the public for the purposes intended by the appropriation.

Defendant, on the other hand, contends that the streets and alleys in the Parker

Addition were formally dedicated to public use and that the dedication has been recognized by the present owner, the Rodessa Oil & Land Company, its lessee, the Arkansas-Louisiana Gas Company, and the Police Jury of Caddo Parish.

The plan of the Parker Addition to the town of Rodessa filed in the Clerk's office of the Parish of Caddo by the Rodessa Land & Development Company was prepared by S. S. Robertson, Civil Engineer, at the request of J. D. Lee, President of the Rodessa Land & Development Company, acting under a resolution of the Board of Directors of the corporation. In addition to filing the plan for record, the Rodessa Land & Development Company, through its president J. D. Lee, specifically declared that the streets and alleys as set out on the plan were dedicated to the public. This appears from the following declaration endorsed on the plan prior to its recordation, viz.:

"We hereby dedicate to public use all streets and alleys in the above subdivision."

"[Signed] Rodessa Land & Development Company,
"J. D. Lee, President."

The plan was approved for the public and for the Parish of Caddo by L. Z. Crawford, parish surveyor, in the following statement appearing on the plan, viz.:

"I hereby approve map as being correct as to acreage and as to being in compliance with provisions of Act 134 of 1896."
"[Signed] L. Z. Crawford,
"Parish Surveyor."

Act No. 134 of 1896, to which reference is made in the certificate of the parish surveyor, requires all real estate owners who desire to subdivide their property into squares or town lots for the purpose of sale, to cause to be made and filed in the conveyance records of the parish a correct map of the property so divided, which map shall contain, among other things, the following:

"4. The name of each street and alley its length and width in feet and inches."

"6. A certificate of the Parish Surveyor of the parish wherein the property is situated in the correctness of the map."

"7. A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use."

The record shows that the Rodessa Land & Development Company in creating the Parker Addition to the town of Rodessa and in platting the subdivision into blocks, lots, streets and alleys, carefully tracked the requirements set forth in Act 134 of 1896.

The record further shows that the Rodessa Oil & Land Company, the successor to the Rodessa Land & Development Company, and the Arkansas-Louisiana Gas Company, the successor to the Arkansas Pipeline Company, specifically recognized the existence of the Parker Addition to the town of Rodessa and the right of the public to the streets and alleys thereof in the oil and gas lease which the Rodessa Oil & Land Company executed

on February 7, 1934, in favor of the Arkansas-Louisiana Pipeline Company, from which company the lease was acquired by the Arkansas-Louisiana Gas Company.

The Rodessa Oil & Land Company and the Arkansas-Louisiana Gas Company also recognized the existence of the Parker Addition and the dedication to the public of the streets and alleys thereof in the petition which on April 9, 1936, the Rodessa Oil & Land Company, at the request of the Arkansas-Louisiana Gas Company, addressed to the Police Jury of the Parish of Caddo, in which it prayed that the Police Jury by appropriate resolution abandon to petitioner all rights and claims it may have to the streets and alleys shown on the attached map of the Parker Addition to the town of Rodessa.

The petition alleges that the Rodessa Land & Development Company, the predecessor of the petitioner, dedicated what is commonly known as the Parker Addition to the town of Rodessa and caused a plat of the Parker Addition to be made and filed in the conveyance records of Caddo Parish on March 3, 1908, where it is recorded in plat book 50, page 73. That all the property in the Parker Addition has been cultivated as farm property; that not a single lot in the subdivision has been sold nor a single street or alley opened to use, with the exception of the main highway lying west of the Kansas City Southern right-of-way; and that there is no need for the streets and alleys remaining open, with the exception of the highway lying west of the railroad right-of-way.

The minutes of the Police Jury of Caddo Parish show that the following resolution was adopted, viz.:

"On motion of Mr. Fuller, seconded by Mr. Williamson, the streets and alleys in the Parker Addition to the town of Rodessa, dedicated for public use as recorded in the office of Clerk of Court of Caddo Parish, March 3rd, 1908, be abandoned, and ownership restored to present owners, with the exception that it shall not affect the main highway lying to the west of the Kansas City Southern Right-of-way designated as State Highway No. 8, and that proper recording be made in the office of Clerk of Court of Caddo Parish."

After the adoption of the foregoing resolution on April 9, 1936, the Rodessa Oil & Land Company caused the proceedings to be recorded in the conveyance records of Caddo Parish, Book 349, page 420.

The action of the Police Jury was taken under and by virtue of Act 151 of 1910, authorizing police juries and municipal corporations (the Parish of Orleans excepted) to revoke and set aside dedications of roads, streets and alley-ways, when they have been abandoned or are no longer needed for public use.

A dedication may be either statutory or according to the common-law. 18 C.J. sec. 1, p. 18. A distinguishing difference between a statutory dedication and a common-law dedication is that the former operates by way of a grant and the latter by way of an estoppel in pais.

A further distinction may exist as regards the extent of the right conferred by the dedication. The right conferred by common-law dedication is an easement only, while in most jurisdictions a statutory dedication vests the fee of the property in the public authority to which the dedication is made. 18 C.J. sec. 6, p. 41.

■ While in a common-law dedication there must be an acceptance by use or otherwise on the part of the public, this is not necessarily so in the case of a statutory dedication. 18 C.J. sec. 68, p. 73. The effect of a statutory dedication is generally indicated by the statute itself.

■ We are of the opinion in view of the language contained in Act 134 of 1936, the dedication under review was complete without a formal acceptance by the public authorities. We are also of the opinion that the irrevocable character of the dedication was not affected by the fact that the property dedicated was not at once subjected to the uses designed. This view is sustained by the case of Sowadzki v. Salt Lake County, 36 Utah 127, 104 P. 111, and the authorities therein cited.

In commenting upon the authorities cited in the opinion in that case, the Supreme Court of Utah said (page 113):

"In all of the foregoing cases it is held that, in case the statute has substantially been complied with, dedication is complete, and no formal acceptance by the public is necessary, and that the streets so dedicated may be opened at any time after such dedication when necessary for public use, and that a failure to open them until such time will not be deemed an abandonment thereof. In some of the cases the distinction with respect to the rights of the purchasers of lots abutting upon the highway and the duty and liability of the public with regard to such a highway is clearly pointed out. No doubt a street or highway may exist, but may not be opened for travel, and, until it is so opened, the traveler may not hold the municipality responsible in case he sustains an injury or damage in using such a street or highway."

The cases of David & Livaudais v. Municipality No. 2, 14 La.Ann. 872, and Jaenke v. Taylor, 160 La. 109, 106 So. 711, are not applicable to this case. The dedications involved in those cases were common-law dedications made long prior to the adoption of Act 134 of 1896.

The case of Jouett v. Keeney, 17 La.App. 323, 136 So. 175, decided by the Court of Appeal for the Second Circuit, is equally inapplicable here. The dedication in that case was also a common-law dedication which required the express acceptance of the municipality or the implied acceptance of the user of the property to become effective.

The case before us involves a statutory dedication. It is a regularly executed and formal dedication, signed, acknowledged and approved in due form, recorded in the proper office—a public record. In these circumstances no subsequent user or acceptance of the dedication was necessary to prove or establish it. Hedge v. Cavender, 217 Ky. 524, 290 S.W. 342.

And as we have hereinabove pointed out the dedication has been recognized by the Rodessa Oil & Land Company, the present owner of the Parker Addition, its lessee, the Arkansas-Louisiana Gas Company, plaintiff herein, and the Police Jury of the Parish of Caddo.

When the Rodessa Land & Development Company dedicated to the public the streets and alleys as set out on the original map of the Parker Addition, without any reservation or restriction indicating an intention to retain the ownership of the land covered by the streets and alleys, it divested itself of the fee as completely as if it had made a sale of the said streets and alleys to the public. Jaenke v. Taylor, 160 La. 109, 106 So. 711; Wilkie v. Walmsley, 173 La. 141, 136 So. 296.

The only action the Police Jury could take on the application of the Rodessa Oil & Land Company that the Police Jury by proper resolution abandon to the applicant all rights and claims it might have to the streets and alleys on the Parker Addition was the action it took under the authority of Act 151 of 1910. That legislative act authorizes Police Juries to revoke and set aside the dedication of roads, streets and alleys when they have been abandoned or are no longer needed for public use.

Section 2 of the statute provides: "That upon such revocation, the ownership of the soil embraced in such roads, streets and alley-ways up to the center line thereof shall revert to the then present owners of the land contiguous thereto."

Under the terms of its resolution the Police Jury did not abandon its rights and claims to the streets and alleys in the Parker Addition to the Rodessa Oil & Land Company, but it abandoned its rights and claims to the said streets and alleys and restored the ownership thereof to the present owners, as provided by Act 151 of 1910.

Among the streets dedicated to the public on the original plat of the Parker Addition is one named "Parker Street," which is fifty feet wide and runs north and south. This street as shown on the plat forms the western boundary of the eleven acre tract owned by Glenn Fitts.

Under the provisions of Act 151 of 1910 and the terms of its resolution based thereon, when the Police Jury revoked the dedication of the Parker Addition, the ownership of Parker Street to its center line reverted to the present owners of the land contiguous thereto. One of the contiguous owners was the Rodessa Oil & Land Company and the other contiguous owner was Glenn Fitts. Therefore, under the clear terms of the legislative act and the police jury resolution based thereon the Rodessa Oil & Land Company and Glenn Fitts became each the owner of the soil up to the center line of Parker Street.

The plaintiff Arkansas-Louisiana Gas Company has pleaded the unconstitutionality of Act 151 of 1910 on two grounds, viz.:

First—That the statute is invalid as being broader than its title, contrary to the provisions of Section 16, Article 3 of the Constitution of Louisiana.

Second—That if the statute is construed to apply to a case where a tract of land claimed to have been dedicated prior to its enactment was a portion of the property of only one landowner, the statute is invalid in that it would constitute a taking of property without due process, contrary to the provisions of the Fourteenth Amendment to the Federal Constitution U.S.C.A. Const. Amend. 14.

The title of Act 151 of 1910 reads as follows:

"Authorizing police juries and municipal corporations to work (revoke) and set aside dedications of roads, streets and alley-ways, when same has been abandoned, or no longer needed for public use, 'Parish of Orleans excepted.'"

■ With regard to the first ground of alleged unconstitutionality of the statute, plaintiff contends that there is nothing in its title to indicate that upon the abandonment of any street or alley the title would vest in the owners of the adjacent property. Hence, the statute is broader than its title.

Plaintiff's contention is untenable. The general purpose of the statute is to provide a method for restoring to private ownership roads, streets and alleys that have been abandoned or which are no longer needed for public use. The title of the statute sufficiently indicates its purpose. The title of any public property restored to private ownership must necessarily vest in some private owner or owners. The designation of such owner or owners is clearly within the scope of the legislation and is some-

thing that any interested person would reasonably expect to find in the statute under its title.

■ With regard to the second ground of alleged unconstitutionality, plaintiff contends that the public never had anything but a servitude on the streets and alleys of the Parker Addition; that as the dedication of the streets and alleys had been made by the Rodessa Land & Development Company prior to the adoption of Act 151 of 1910, the dedicator retained a reversionary interest in the property, which could not be defeated by the subsequent legislation, and that upon the abandonment of the servitude the property subject thereto reverted in full ownership to the dedicator.

Plaintiff's contention is not well founded. As we have hereinabove shown, the dedication in this case was a statutory dedication and not a common-law dedication. When the dedication of the streets and alleys in the Parker Addition was made by the Rodessa Land & Development Company in strict conformity to the statute, the dedicator did not grant the public a mere servitude on the property, but it conveyed to the public a fee title to the property. As a result of the dedication, the ownership of the streets and alleys in the Parker Addition was vested in the public and the legislature had the right to designate the person or persons in whom that ownership should vest upon the abandonment of the property by the public.

At the time Act 151 of 1910 was adopted, neither the Rodessa Land & Development Company, nor its successor in title, owned any property right in the streets and alleys

of the Parker Addition, and, therefore, no property right was taken away by the legislative act, in contravention of the Fourteenth Amendment to the Federal Constitution, U.S.C.A.Const. Amend. 14.

The case of Neil v. Independent Realty Company, 317 Mo. 1235, 298 S.W. 363, 70 A.L.R. 550, cited by plaintiff, is not applicable to this case. The dedication involved in that case under the law of Missouri did not vest the fee title of the dedicated property in the public, but created only an easement, with the right of reversion in the dedicator.

For the reasons assigned, our original opinion and decree herein are recalled and it is now ordered that the judgment appealed from be annulled and that plaintiff's suit be dismissed at its costs. The right of the parties to apply for a rehearing is expressly reserved.

O'NIELL, C. J., is of the opinion that the judgment appealed from should be affirmed.

ODOM, J., dissents and adheres to his original opinion.