325 So.2d 688 (1976)
Benjamin F. ESHLEMAN, Jr.
v.
Sterling J. DURACHER and John M. LaPlante, Jr.
No. 10567.
Court of Appeal of Louisiana, First Circuit.
January 12, 1976.
*689 Mike J. Balen, Covington, for appellant.
Guy L. Deano, Jr., Covington, for appellees.
Before SARTAIN, J., and BAILES and PICKETT, JJ. Pro Tem.
JULIAN E. BAILES, Judge Pro Tem.
This litigation originated as a possessory action, however, it was converted to a petitory action by defendants-appellants claiming ownership of the subject property. Both plaintiff and defendants deraign their title from a common ancestor. The trial court decreed plaintiff-appellee the owner of the property. Additionally, the trial court issued a permanent injunction against defendants interfering with the possession and ownership of plaintiff.
From our consideration of the record we find the trial court correctly determined that plaintiff is the owner of the subject property, but we find the trial court erred in enjoining defendants as above stated. Accordingly, we affirm in part and reverse in part.
Involved is the ownership of a fifty-foot strip of property located in Mandeville, St. Tammany Parish, Louisiana. The area in question is located in Pine Place Subdivision and extends in a generally north-south *690 direction between Villere and Monroe Streets therein.
This dispute arose between persons owning property on either side of the strip after the Town Council for the Town of Mandeville revoked any possible dedication of it for public purposes that might have existed. That action was taken after some uncertainty arose as to whether the area had been dedicated by the subdivider as a street.
The record indicates that Pine Place was originally laid out by Guy L. Deano, Sr., in September, 1937, and that he sold certain parcels of it in the following years. The original subdivision plat did not show the area as a proposed street. During the lifetime of the developer, several plans were considered for the further construction of streets in the subdivision and maps were drawn showing their proposed locations, but no action was ever taken to complete them.
On December 14, 1959, Mr. Deano, Sr. sold to Sterling J. Duracher Lots 39 and 40 of Pine Place; attached to the act of sale was a revised subdivision map dated November 5, 1956, showing the purposed street. Those lots adjoined that area on the west. Mr. Deano died in September, 1961; in May, 1962, that map was recorded in the public records of that parish by someone unknown to all testifying herein.
In December, 1956, William J. Dobson, the ancestor in title of the plaintiff here, Benjamin F. Eshleman, Jr., acquired Lots 21 and 22 of the subdivision which lie immediately to the east of the fifty-foot strip. By subsequent acts, Dobson also acquired from the Deano heirs other adjoining lots and the fifty-foot strip itself. He subsequently conveyed all of his holdings therein to Eshleman. When that transfer was attempted, the ownership of the fifty-foot strip was questioned by the title examiners. To rectify the uncertainty of the title, the Mandeville Town Council was requested to revoke any dedication that might have existed which they did, since no development of the street had ever taken place or was contemplated. Thereafter, this litigation ensued. The plaintiff claims full ownership due to his acquisition from Dobson, while it is the position of the defendants that the area was, as a matter of law, dedicated to public use and that, as a consequence of the revocation of that dedication, the adjoining land owners acquired to the center of it equally.
The trial judge concluded that the preponderance of the evidence was to the effect that there had not been a dedication of the area and that the plaintiff was the owner of the entirety of the strip as a result of his purchase from Dobson.
As noted by the trial court, the record contains some facts indicating that the strip might have been dedicated for public use as a street; the great weight of the evidence is, however, to the contrary and when viewed as a whole, the conclusion is compelled that no such action was ever intended by the developer.
The defendants contend that the actions of the landowner are sufficient to establish here a common law or implied dedication of this area as a street. They principally rely upon the fact that the map showing the street was made a part of the public records of the parish and that a sale was subsequently made to one of the parties herein with that map attached. They also argue that the sale to Dobson with mention made therein of the "proposed street" is further indication of the developer's intentions.
Edward J. Deano, a realtor and notary public, was actively involved with his father in the planning and marketing of the subdivision. He related that a number of plans were devised through the years for the addition of streets for that area but that no one plan was ever settled on and that there was no intention on the part of his father to dedicate the strip at issue for public purposes. The personal residence of *691 that witness now sits in the proposed path of that street and it is located at approximately the same place that his father's home had been. He was the notary on the sale to Duracher and, in that connection, positively stated that the only reason that the map was attached to the act was to identify the property being sold and that it was not intended to be a final subdivision plan. We also note that in September, 1956, Mr. Deano, Sr. conveyed a parcel referred to herein as the "Tuttle Sale" which was a tract just across Villere Street from the former Duracher property; the area contained in that sale included part of the proposed street site north of Villere Street as shown on the 1965 map, yet no mention was made of the street in that sale, and the vendee acquired the land without the burden of such a public area. Most important, however, is the fact that there is no evidence of public acceptance of the allegedly dedicated area.
In the City of Baton Rouge v. State National Life Ins. Co., 271 So.2d 571 (La.App.1st Cir. 1972), we said:
"Louisiana recognizes two types of dedication, statutory and implied or common law. The chief differences in result between the two types of dedication are that a statutory dedication operates by way of a grant and vests title in the public while a common law dedication operates by way of an estoppel in pais and confers to the public only a servitude. A statutory dedication is complete and irrevocable even where there is no exercise of the use of the dedicated property by the public. Effect of a statutory dedication is generally indicated by the statute itself. The Louisiana Statute governing statutory dedication is found in R.S. 33:5051. That statute, which dates back to 1896, requires among other things, the filing of a map and a formal dedication to the public use made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plots shown on the map.
"In a common law dedication, there must be shown a definite intent to dedicate on the part of the land owner and an acceptance by the public. Neither element must be formally expressed but both must be sufficiently clear so as to exclude every other reasonable hypothesis except that of dedication. See Parish of Jefferson v. Doody, 167 So.2d 489 (La.App.4th Cir. 1964) and cases cited therein. Our courts have held that dedication to the public may be shown by any evidence which shows intent of the owner to so devote his property. Mere use by the public for the purpose intended by the dedicator can constitute a sufficient acceptance. Arkansas-Louisiana Gas Company v. Parker Oil Company, 190 La. 957, 183 So. 229; Best Oil Company v. Parish Council of East Baton Rouge, 176 So.2d 630 (La.App.1st Cir.1965)."
While some slight use of a very small part of this strip might have been made by Duracher, there is not the least evidence that anyone else ever used it or thought it was a street. We noted that John M. LaPlante, Jr., the present owner of the former Duracher residence, testified that he never used it. We think that the evidence is insufficient to show an intent to dedicate the strip on the part of the landowner; however, the equally essential element of public acceptance of the dedicated area is totally lacking. Therefore, the ownership of the plaintiff in entirety must be maintained.
The appellants also complain here of that part of the judgment rendered below which contains a permanent injunction against their interfering with Eshleman's ownership of the property in question. Their contentions in that regard are well founded. This was originally a possessory action by the plaintiff which was converted into a petitory action by the reconventional demand filed by the defendants. See Code of Civil Procedure, Art. 3657.
*692 Code of Civil Procedure, Art. 3663 provides, in part, as follows:
"* * * Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right, is available to:
(1) A plaintiff in a possessory action, during the pendency thereof; and
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right of which he claims the ownership, the possession, or the enjoyment."
The Official Revision Comments of that article are also pertinent here:
"(a) This article makes no change in the law.
"(b) Injunctive relief is made available in two separate and distinct types of cases: (1) as an ancillary remedy in a possessory action; and (2) as the relief to be granted in an injunction suit brought to enjoin trespassers and other disturbers, and which is neither a possessory nor a petitory action. See Churchill Farms v. Gaudet, 184 La. 984, 168 So. 123 (1936)."
As this case has been converted to a petitory action, neither of the situations envisioned by that article or those official comments apply here; therefore, the injunction must be dissolved.
The judgment of the trial court is, therefore, affirmed in part, reversed in part and rendered; the costs of this appeal to be equally divided between the appellants and the appellee.
For the foregoing reasons, the judgment appealed is affirmed insofar as it decrees plaintiff the owner of the subject property; the judgment decreeing a permanent injunction against defendants is reversed; and costs incurred in the trial court are assessed against defendants and costs of this appeal are assessed equally against appellants and appellee.
Affirmed in part and reversed in part.