# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-1361

**RODNEY J. POCHE AND DIXIE ANN POCHE**

**VERSUS**

**RANDALL J. RACCA AND WESTPORT INSURANCE COMPANY**

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 01-63485
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Billie Colombaro Woodard, Oswald A. Decuir, and Billy Howard Ezell, Judges.

**REVERSED AND RENDERED.**

**Larry Lane Roy**
**Preis, Kraft & Roy**
**P. O. Drawer 94-C**
**Lafayette, LA 70509**
**(337) 237-6062**
**Counsel for: Defendants/Appellants**
**Randall J. Racca**
**Westport Insurance Company**

**Robert Louis Broussard**
**Durio, McGoffin, Stagg**
**P. O. Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**Counsel for: Plaintiffs/Appellees**
**Rodney J. Poche**
**Dixie Ann Poche**

**EZELL, JUDGE.**

This case is a legal malpractice case. Randall Racca appeals the decision of the trial court finding that he was guilty of malpractice in failing to discover an encumbrance on a section of land during a title exam he performed for Rodney Poche. He also asserts that the award of damages was excessive. For the following reasons, we reverse the decision of the trial court.

This suit arises out of Racca's legal services to Poche related to his planned purchase of land from Harvey and Wilda Webre for development into residential property. Included in the land to be purchased from the Webres was a "dog-leg," a sixty foot strip of land running roughly east to west off of the bottom of what would otherwise be a rectangular piece of land. Racca was to examine the title of the property to be purchased for Poche. However, in the process of performing the title search, Racca failed to discover a conventional servitude of passage belonging to Clifford Hebert, the owner of adjoining property, running over the dog-leg portion of the property. In a title opinion dated March 25, 1998, Racca told Poche that the title was clear. Racca admits the fact that his examination of the public records failed to reveal the servitude. On June 25, 1998, Poche purchased the Webre property, relying on the title opinion rendered by Racca. At this time, he intended to place a road along the dog-leg, using it as an entrance to the subdivision from an I-10 service road.

On August 24, 1999, fourteen months after purchasing the Webre land, Poche purchased another piece of land from Warren Degatur. This was a small triangular piece of land with one side abutting the dog-leg portion of the Webre property and another side abutting the I-10 service road. After purchasing this land, Poche decided that he could combine the dog-leg portion of the old Webre land with the new land he purchased from Degatur to form a large enough lot to become a viable commercial property. To further this plan, he changed his mind about the location of the road

1

entering the subdivision. Instead of running the road east to west along the dog-leg, he would run the entrance north to south along the new Degatur property to meet the same I-10 service road.

After purchasing the Degatur property, Poche discovered a pipe running along the dog-leg. He immediately told Racca about what he perceived as a trespass on his property. Racca contacted Hebert, who told him of the servitude. Poche himself went to the Clerk of Court for St. Martin Parish and discovered the servitude in the public records.

Poche claims that Racca's work failed to meet the standard of care required of an attorney performing a title examination. The trial court agreed with Poche, finding that Racca was negligent in failing to meet the appropriate standard of care, and that this negligence was the cause of $209,000 in damages to Poche for his loss of profit from the sale or lease of the potential commercial property. The trial court also awarded Poche $75,000 in general damages for mental suffering. From this decision, Racca appeals.

As his main assignment of error, Racca asserts that the trial court erred in disregarding evidence that the dog-leg portion of the Webre property was statutorily dedicated to the public prior to Poche's acquisition of that property, thereby preventing Poche from acquiring ownership of this property and preventing him from suffering damages from Racca's failure to discover the prior servitude of passage. We agree.

Whether property has been dedicated for public use is a question of fact. *Winningham v. Hill*, 164 So.2d 384 (La.App. 2 Cir. 1964). A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Based on the law as outlined herein, and for the reasons that follow, we find that the trial court was clearly

2

wrong in finding that the property in question had not been dedicated to the public use.

The public may acquire an interest in the land on which a road is built or in the use of a road through purchase, exchange, donation, expropriation, prescription, or dedication. 2 A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE PROPERTY § 96 at 211(4th ed. 2001). Statutory dedication occurs when a landowner subdivides real estate in accordance with the requirements of La.R.S. 33:5051. Louisiana Revised Statutes 33:5051 provides for the subdivision of real estate into squares or lots with named streets and for the dedication to public use of all streets, alleys, and public squares on the map. A statutory dedication vests ownership in the public unless the subdivider reserves ownership of streets and public places and grants the public only a servitude of use. *Arkansas-Louisiana Gas Co. v. Parker Oil Co. Inc.*, 190 La. 957, 183 So. 229 (1938) (on rehearing). "In order to effect a statutory dedication, complete and detailed compliance with the statute is not required; substantial compliance will suffice." *Garrett v. Pioneer Prod. Corp.*, 390 So.2d 851, 856 (La.1980).

On April 1, 1998, after Racca rendered his title opinion but before Poche purchased the Webre land, Poche, acting as an agent for the Webres, commissioned Timothy Collins to prepare a subdivision plat for the potential subdivision. The plat includes the extension of Ramsey Drive, a road running up to the subdivision. The Ramsey Drive extension shown on the plat ran the length of the subdivision to the dog-leg, then turned ninety degrees to run along the dog-leg to the service road. Clearly marked on the Ramsey extension is "RAMSEY DRIVE 60' UNIMPROVED DEDICATED R/W." Also on the plat is the following certification (emphasis ours):

> I (WE) HEREBY CERTIFY THAT I AM (WE ARE) THE OWNER(S) OF THE PROPERTY SHOWN AND DESCRIBED HEREON AND THAT I (WE) HEREBY ADOPT THIS PLAN OF SUBDIVISION

3

WITH MY (OUR) FREE CONSENT, ESTABLISH THE MINIMUM BUILDING RESTRICTION LINES, AND *DEDICATE ALL STREETS, ALLEYS, WALKS, PARKS, AND OTHER OPEN SPACES TO PUBLIC OR PRIVATE USE AS NOTED*.

This subdivision plat was approved by the St. Martin Parish Planning Commission on April 15, 1998, and was filed into the conveyance records for that parish on May 25, 1998, and were attached to restrictive covenants for that subdivision.

At trial, two experts testified that the plat met the requirements of statutory dedication. William Mouton, Poche's own expert testified that "[t]he language of the plat of survey attached to the restrictive covenant does contain, because of the language on the plat, an intent to dedicate that portion of Ramsey Drive as a public street." Phillip Boudreaux, an expert for Racca testified that this was "a classic example of a statutory dedication" and that the language on the plat dedicated any streets shown on the map that were not previously dedicated. This expert testimony was uncontradicted.

It is clear to this court that, based on the marking of the Ramsey Drive extension as a dedicated right-of-way, the language in the plat certification dedicating "ALL STREETS . . . TO PUBLIC OR PRIVATE USE AS NOTED," and the testimony of both experts at trial, Poche, acting on behalf of the Webres, dedicated the dog-leg portion of the Webre property to the public prior to his purchase of that land. The trial court committed manifest error in finding otherwise. Full ownership of the dog-leg was vested in the public prior to Poche's acquisition of the property. While Racca's actions clearly failed to meet the standard of care for an attorney providing a title examination and would arise to the level of malpractice, his actions ultimately did not cause any damages to Poche. Because full ownership was vested in the public at the time of the filing of the plat, Poche was prohibited from using the dog-leg in any manner that would prevent the public from making use of the dog-leg. He could no

4

longer use the dog-leg strip for commercial purposes, and accordingly, he could not then suffer any loss of profits from the use of the land.

Because we find that Poche suffered no damages from Racca's actions due to the dog-leg being dedicated to the public prior to Poche's acquisition of that property, we need not address Racca's other assignments of error or Poche's answer seeking additional damages. The judgment of the trial court awarding Poche $209,000 in lost profits and $75,000 in general damages is hereby reversed. Costs of this appeal are assessed against Rodney Poche.

**REVERSED AND RENDERED.**

5